## Cheslock *v.* Pittsburgh Railways Company, Appellant.

Argued October 3, 1949. Before MAXEY, C. J., DREW, LINN, PATTERSON, STEARNE and JONES, JJ.

*D. H. McConnell*, for appellant.

*T. Robert Brennan*, with him *Brennan & Brennan*, for appellee.

OPINION BY MR. JUSTICE JONES, November 14, 1949:

Margaret Cheslock sued the defendant company under the Wrongful Death Act for damages to herself, as widow, and on behalf of her two minor children for the death of her husband due to alleged negligence of the defendant. She also made claim in the same action, under the Survival Statute, as administratrix of her deceased husband's estate. The jury returned a verdict in favor of Mrs. Cheslock and her children in the sum of $30,000, but, in favor of the defendant, as to the estate's claim. The defendant filed motions for a new trial and for judgment n. o. v. which were refused. The refusal of the motion for a new trial was conditioned on the plaintiff's filing a remittitur for $4,000 of the verdict for herself and her children. That was done; and judgment was accordingly entered for the plaintiff for $26,000 from which the defendant has appealed.

The appellant assigns for error only the lower court's refusal of its motion for judgment n. o. v. The denial

of a new trial is no longer complained of; nor is the amount of the judgment questioned.

The appellant contends that the verdict for the plaintiff is not supported by any credible evidence of negligence on the part of the defendant. With that contention, we are unable to agree. Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, we are unable to see how the question of the defendant's liability could, in the circumstances, have been ruled as a matter of law.

At the time of the accident here involved, Paul Cheslock, the plaintiff's decedent, was thirty-two years old, in good health and living with his wife and two children in Meadowlands, a mining town, in Washington County, Pennsylvania, in a home owned by him and his wife. The rear of their lot abutted on the defendant company's fifty foot private right-of-way whereon the defendant maintained at that point a single track of its trolley line between Pittsburgh and Washington, Pa. Cheslock, who was an employe of the Fort Pitt Bridge Works at Canonsburg, spent September 14, 1946, a Saturday, at home working about the house and putting his furnace in order for the winter, being so engaged until about 5:30 P. M. Shortly thereafter, the family had supper. The day was the elder daughter's sixth birthday and the parents planned a surprise of ice cream and cake for the children. Cheslock was to go to the village store for the ice cream but, before doing so, he went to bathe and dress. To occupy the children in the meantime, Mrs. Cheslock took them for a walk; she left the house about 7 P. M., at which time her husband was in the bath tub. When she returned home about 8 P. M., she found him absent. On going out back fifteen minutes later, she heard moaning and, upon investigating, found her husband lying unconscious near the track on the defendant's right-of-way immediately back of the

Cheslocks' property. His crushed right hand was lying on the rail and he suffered other serious injuries, including a depressed compound fracture of the skull, which, according to the medical testimony, could have been caused only by a violent blow. Blood and bits of flesh were found on the rail adjacent to where Cheslock lay when discovered by his wife. Mrs. Cheslock dragged her husband to the rear porch of their house, a distance of about fifty feet, and then summoned help. He was soon moved inside the house and a little later was removed to the hospital where he died about 10 A. M. the next day without having regained consciousness. Two pints of ice cream were found lying on the track near where Cheslock's body had lain. The girl who had sold him the ice cream in the village store was referred to in the testimony but was not otherwise identified or called as a witness by either party.

At trial, the plaintiff produced as her principal witness, as to the happening of the accident, one Ray Fonner who, with his wife, was a passenger that evening on a street car of the defendant company travelling toward Washington, Pa. The Fonners had boarded the car several station stops before Meadowlands. Fonner, who had sat in the left front seat immediately behind the motorman, testified that, as the car was approaching the place where the Cheslock property is located, he saw a man lying on the outside of one of the rails of the track with his right hand near the rail and holding the right side of his head. When Fonner saw the man along the track in the situation just described, the trolley was some two hundred to two hundred and twenty-five feet away from him. Fonner "yelled" a warning to the motorman that there was a man on the track. The motorman did not look up immediately, being then engaged in tearing up tickets or putting money in his changer, but he admitted at trial that he had heard

the warning. Mrs. Fonner and two other women passengers each testified to having seen and heard Fonner jump up and shout his warning to the motorman. The time was 7:30 to 7:35 P. M.; it was still daylight; and visibility was good. After having passed the place where the man had been lying along the track, the motorman began slowing down the car and, when it had about come to a stop, he turned and asked passengers whether they had seen anyone along the track. No one said anything except Fonner who then said that he had seen a "man lying back there". According to the motorman's testimony, he could have brought the car to a stop at the time in question in considerably less than two hundred feet.

The evidence further justified a finding by the jury that, for the past thirty years, residents of the Meadowlands settlement, to the number of approximately thirty daily, had used the right-of-way of the defendant company in the vicinity where Cheslock received his mortal injuries as a way of travel in going to and from the village store and that that condition was known, or should have been known, to the motorman who had travelled the trolley line for many years in pursuance of his employment by the defendant.

The appellant's principal contention is that Fonner's testimony is so self-contradictory as to be incapable of affording anything more than a guess concerning any material fact in issue to which he testified and, particularly, as to whether the motorman was actually warned of the presence of a man lying along the track in time to have brought the trolley to a stop before striking him. If that were so, then, of course, the case of *Ginocchietti v. Lehigh Valley Railroad Company*, 338 Pa. 507, 12 A. 2d 919, which the appellant stresses, would be in point. But, such is not the situation which the record before us reveals. At least seven times, in

direct and cross-examination, Fonner testified positively and directly that the trolley was still two hundred to two hundred and twenty-five feet away when he first saw the man lying along the track and "yelled" to the motorman. Any confusion in his testimony came when counsel for the defendant cross-examined him as to what he had said *after* the motorman had brought the trolley almost to a standstill *some distance beyond where the man had been lying.* As the witness related, he had *then* said that he had seen a man lying along the track "back there". What he was thus testifying to in cross-examination was as to where the man was lying in relation to where the witness and the motorman *then* were. He was not speaking with reference to the relative distance between the place where he shouted his warning to the motorman and where the man was lying along the track. His testimony was not self-contradictory. Any seeming inconsistencies therein presented no more than a matter for a jury's reconcilement. See *Danko v. Pittsburg Railways Company*, 230 Pa. 295, 298-299, 79 A. 511; also *Ingram v. Pittsburgh*, 350 Pa. 344, 349, 39 A. 2d 49; *Anstine v. Pennsylvania Railroad Company*, 342 Pa. 423, 429, 20 A. 2d 774; *Ely v. Pittsburgh, Cincinnati, Chicago and St. Louis Railway*, 158 Pa. 233, 238, 27 A. 970; and *Miller v. Lehigh Valley Railroad Company*, 58 Pa. Superior Ct. 558, 570-571.

The learned trial judge, who had seen and heard Fonner testify, aptly observed in the opinion for the court en banc with respect to his testimony that,—"His inconsistency in cross-examination, a careful reading of his testimony will disclose, no doubt was a result of his not clearly understanding whether the questions referred to the first warning or whether they referred to the conversation which he had with the motorman after the car had been brought to a stop up near the trestle [150 to 200 feet beyond the point of accident]. In any

event, his alleged inconsistencies were matters for the jury to iron out." What this court said in like connection in *Parker v. Matheson Motor Car Company*, 241 Pa. 461, 466, 88 A. 653, is especially apposite here,—"In other words, the search for the truth did not develop such a conflict that a finding one way or the other would be a mere guess; it rather presented a condition of evidence, where, by making due allowances for the position of the witness and the form of the questions and answers on cross-examination, it was possible to harmonize apparently conflicting statements, and to draw justifiable inferences from the testimony as a whole. Upon this state of the evidence it was for the jury to say how they would find. . . ."

The question of the defendant's negligence was properly a matter for the jury on the basis of either actual or constructive notice to the motorman of the presence of the man lying along the track. In *Frederick v. Philadelphia Rapid Transit Company*, 337 Pa. 136, 139-140, 10 A. 2d 576, Mr. Justice STERN, after recognizing that ". . . a trespasser . . . is not a pariah", stated the rule to be that ". . . when the owner or operator [of an instrumentality] is put on guard as to the presence of the trespasser, the latter immediately acquires the right to proper protection under the circumstances". Restatement, Torts, §334, expresses the same legal concept thusly,—"A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety." The rule, as so stated, is in accord with the law of this State: see, e.g., *Francis v. Baltimore & Ohio Railroad Company*, 247 Pa. 425, 93 A. 490.

The appellant's suggestion that the injuries which caused Cheslock's death may have been inflicted by an-

other trolley car passing at some other time is irrelevant speculation. There is no evidence to that effect. On the other hand, it is beyond question that Cheslock was alive when Fonner saw him lying along the track; he did not die until the next morning. And, the cause of death was the skull fracture and cerebral hemorrhage. Not only is there no proof that his skull had already been fractured when Fonner first saw him, but it is highly improbable that he would have been holding his head with his hand, as Fonner saw him do, if he was then suffering from a depressed compound fracture of the skull or holding it with his right hand if that hand had already been crushed, as it was when he was found a little later. It was a permissible inference in the circumstances that the car on which Fonner was a passenger struck Cheslock and inflicted his *fatal* injuries. See *Mars v. Philadelphia Rapid Transit Co.*, 303 Pa. 80, 154 A. 290. In the *Mars* case, the cause of death was not proven by medical testimony, as here, but was held to be inferable from the proven facts and circumstances attending the accident although it was evident that the plaintiff's decedent had been injured and had lost considerable blood before the allegedly negligent instrumentality (viz., a street car) struck him. With respect to that situation our present Chief Justice said for this court (pp. 88-89),—"That the death of plaintiff's decedent was due to the street car striking him and pushing him along the rail for 23 feet is a fact deducible as a reasonable inference from the facts and conditions directly proved and it cannot justly be classed as a mere conjecture or surmise or guess." The same comment is no less pertinent here.

Judgment affirmed.