## GREEN v. READING CO.
### No. 10165.

United States Court of Appeals
Third Circuit.

Argued April 20, 1950.

Decided July 19, 1950.

John R. McConnell, Philadelphia, Pa., for appellant.

B. Nathaniel Richter, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The defendant, having suffered judgment against it in the court below, and its motions for judgment or a new trial pursuant to Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., having been denied, raises on this appeal the question, whether the learned trial judge correctly instructed the jury on the law concerning its duty toward the plaintiff.

The pertinent facts are reported in the opinion of this Court dismissing a prior appeal.[1] We need only reiterate that the applicable law on the merits of the controversy is that of Pennsylvania.

The jury was given a definition of ordinary negligence, and then, after a discussion of the facts, it was told:

"I think the thing for you to do, ladies and gentlemen of the jury, is to analyze all this testimony and apply the definition of negligence which I have heretofore outlined. If you should find that under the circumstances the defendant's brakeman, who was in control of the rear end of this train and could control it by applying the brakes, did not use the ordinary caution and prudence of an ordinarily reasonable, cautious, and prudent man in watching the track and looking for any obstruction thereon or looking for anyone that might be upon the tracks, if you find that he didn't exercise that reasonable caution and care of a reasonably careful and prudent man, then you would be justified in finding a verdict for the plaintiff. On the other hand, if you find that under all the circumstances the employee who was in control of the rear of this train did exercise such reasonable care and prudence as a man of that type would have exercised under all the circumstances in the case as has been outlined upon the witness stand, then you will find in favor of the defendant, because there is no other type of negligence which has been established here which would make it possible for the plaintiff to recover damages."

██ It is not disputed that the plaintiff, at the time he was injured, was involuntarily present on the defendant's siding. The accident occurred late at night, and the siding was not easily accessible.[2] There was no attempt to prove that strangers to the defendant even occasionally went down to the right of way here involved.

Although not a trespasser, the plaintiff stood in no better position. Frederick v. Philadelphia R. T. Co., 1940, 337 Pa. 136, 10 A.2d 576; Dobrowolski v. Pennsylvania Railroad Co., 1935, 219 Pa. 235, 238–239, 118 A. 488. From this point, Sections 333 and 336 of the Restatement, Torts (1934), are expressive of the Pennsylvania law. Frederick v. Philadelphia R. T. Co., supra, 337 Pa. at pages 140–141, 10 A.2d 576; Tedesco v. Reading Co., 1942, 147 Pa.Super. 300, 304, 24 A.2d 105; Maksimshuk v. Union Coll. Co., 1937, 128 Pa.Super. 86, 91, 94–95, 193 A. 669; cf. Cheslock v. Pittsburgh Rys. Co., 1949, 363 Pa. 157, 69 A.2d 108. Summarized, the rule is that unless the defend-

---

1. 1950, 180 F.2d 149.

2. The siding, located near Fifth and Westmoreland Streets in Philadelphia, Pennsylvania, runs approximately north and south and is spanned by the east-west footbridge from which the plaintiff asserted he was thrown by thugs. About 5 feet west of the siding is a perpendicular stone retaining wall rising 12.7 feet to about the street level, and is surmounted by a metal fence 4 feet high. The wall extends north and south of the footbridge about half a city block and is surmounted either by the fence or buildings. About 6½ feet east of the siding the ground again drops perpendicularly about 8.6 feet and is retained by a stone wall. At the foot of this drop are defendant's "main" tracks, and east of those tracks is another raised siding corresponding to the west siding described. The nearest and only light in the vicinity of the accident, which occurred on the west siding, is an ordinary street lamp located to the west of the siding at the street level. The base of this lamp is about 12.7 feet above the level of the siding, about 2 feet north of the footbridge and about 30 feet west of the west end of the footbridge.

ant was apprized of the plaintiff's presence, no duty in regard to his safety arose, but if the defendant was put on guard as to the plaintiff's presence, the latter immediately acquired the right to proper protection under the circumstances. In the traditional language of the Pennsylvania courts, the defendant is liable only for "wanton negligence": "As applied to the type of cases of which the present is an example, it is *not* wanton negligence to fail to use care to discover the presence of an unanticipated trespasser, but it *is* wanton negligence, within the meaning of the law, to fail to use ordinary and reasonable care to avoid injury to a trespasser after his presence has been ascertained * * *." Frederick v. Philadelphia R. T. Co., supra, 337 Pa. at page 140, 10 A.2d at page 578. (Emphasis in text).

■ From the foregoing, we think it evident that the charge given to the jury in the instant case was erroneous and prejudicial to the defendant. It was not, of course, necessary to use the term "wanton negligence", but the jury should have been told that the defendant's duty to exercise reasonable care for the plaintiff's safety did not arise unless and until the defendant learned of his presence, or perceived facts which would have indicated his presence. Frederick v. Philadelphia R. T. Co., supra, 337 Pa. at page 141, 10 A.2d 576, referring to Restatement, Torts, Section 336, Comment b. Instead, and in contradiction of the applicable law, the jury was advised to apply the ordinary rule of negligence, and to test with it the conduct of the defendant's employee "in watching the track and looking for any obstruction thereon or looking for anyone that might be upon the tracks." The plain error of the charge is brought into sharp relief by Illustration 4 to Comment c, Restatement, Torts, Section 336: "A, while trespassing upon the right of way of the X & Y Railroad Company, walks through a deep cut only wide enough to permit the passage of a single train. While there, he is run over by a train of the X & Y Railroad Company. The railroad company is not liable * * * if the accident is due to the engineer's failure to keep a lookout. The railroad company is liable if the engineer had seen A obviously unable to get out of the way of the train and the accident was due to his failure to exercise reasonable care thereafter to stop the train before it ran over A." [3]

Since the charge laid down a wholly erroneous rule of law, it was not, as plaintiff contends, a saving grace to use the phrase "under the circumstances". At most, the phrase could only modify the rule of the quoted charge by reference to a prior statement that the defendant's employee "would not seem" to be burdened with the same degree of care as he would if this were a public crossing case, following which the discussion turned to the lighting conditions. But this merely left the jury with the notion that it ought not to be so strict in this case as in cases of public crossings; it did not mark out the clear standards of conduct specified by the local law outlined above.

Similarly, in the course of the discussion of the evidence in the case, the jury was told that "The greatest question in dispute in this case is whether or not the brakeman * * * had any knowledge of the plaintiff being on these tracks." This was directly related to the contradicted testimony of the plaintiff that he had a conversation with the defendant's employee, immediately before the accident, from which the employee knew he was lying on the siding in need of help. Certainly the evidence was significant, for if the jury believed the plaintiff, it was entitled to find that his presence was known and that the defendant was responsible for his injuries, there being evidence that the draft of cars could have been stopped in sufficient time to avoid them. The statement was correct as far as it went, but it fell short of what was needed

3. The illustration is not to be taken for more than it is, an exemplification of the operation of the applicable rule. For the means by which the railroad may be charged with the notice emburdening it with the exercise of due care, see Cheslock v. Pittsburgh Rys. Co., 1949, 363 Pa. 157, 69 A.2d 108; Frederick v. Philadelphia R. T. Co., 1940, 337 Pa. 136, 10 A.2d 576; Restatement, Torts, Sections 334–339 (1934).

because the jury was not in any way or in any part of the charge as a whole made aware of the rule, that unless the employee involved knew or from facts known to him, should have known or believed that the plaintiff was present, he had no duty of care toward the plaintiff.

The plaintiff urges, nevertheless, that the error of the charge is not available to the defendant as an issue on this appeal because it made no objection to the charge before the jury retired. Rule 51, Federal Rules of Civil Procedure. The defendant relies on its request for charge to indicate to the trial court the proper rule.[4] But the plaintiff maintains that the request was erroneous and justifiably denied because its first sentence would take away a factual issue from the jury and its last sentence would relieve the defendant of liability unless the plaintiff was "seen" by the defendant's employee, whereas the rule, Frederick v. Philadelphia R. T. Co., supra, is that a person in the position of plaintiff may be perceived by any of the senses.

■■■■ We have held that Rule 51 "is designed to preclude counsel from assigning for error on appeal matter at trial which he did not fairly and timely call to the attention of the trial court." Stilwell v. Hertz Drivurself Stations, Inc., 3 Cir., 1949, 174 F.2d 714, 715; Alcaro v. Jean Jordeau, Inc., 3 Cir., 1943, 138 F.2d 767, 771. But it is likewise true that "there is no good reason for applying the rule so indiscriminately as to prevent counsel from pointing out on appeal matter which he did endeavor to identify to the trial court and which he had every reason to believe the court fully comprehended when granting an exception." Alcaro v. Jean Jordeau, Inc., supra, 138 F.2d at page 771. In the instant case, the learned trial judge in lieu of the procedure of Rule 51, did not rule upon the requests for instructions until after the charge to the jury had been given. Upon the conclusion of the

charge, he stated that he thought he covered the requests rather generally, but to protect the parties he would refuse the requests and allow exceptions thereto. Then, counsel were asked whether there were any "other" exceptions, and counsel for defendant replied in the negative. This was certainly the equivalent of saying, "Defendant has no suggestions for correction of your charge other than those contained in defendant's requests." Alaska Pacific Salmon Co. v. Reynolds Metals Co., 2 Cir., 1947, 163 F.2d 643, 658. Patently, the trial judge granted an exception to such parts of the charge as were inconsistent with, or did not properly cover, the parties' requests. We have no doubt that, despite the alleged errors in the defendant's request here involved, it was sufficiently specific to direct the attention of the court below to the issue and to the law, that it was adequate to indicate the error of the charge, and that the court comprehended the issue when it granted the exception following the charge. As we held in Moreau v. Pennsylvania R. Co., 3 Cir., 1948, 166 F.2d 543, 545, "Counsel must make his points clearly so that the trial judge may see what they are and if he believes they are right, follow them. But he is not required to indulge in reiterative insistence in order to preserve his client's rights." We conclude, therefore, that the issue here involved was fairly and timely within the cognizance of the trial court, and that the substantive spirit of Rule 51 is satisfied. Cf. Pfotzer v. Aqua Systems, Inc., 2 Cir., 1947, 162 F.2d 779, 783; Sweeney v. United Feature Syndicate, Inc., 2 Cir., 1942, 129 F.2d 904, 905-906. Parenthetically, it may be noted that the defendant included the issue asserted by it on this appeal in its motion for a new trial, which was denied.

For the reasons stated the judgment of the District Court will be reversed, and the cause remanded for a new trial.

---

4. "1. The Defendant was under no obligation to anticipate the presence of Plaintiff on its tracks under the circumstances of this case. The Defendant therefore had the duty only to refrain from willful and wanton negligence toward the Plaintiff once his presence had actually been discovered by an employee of the Defendant. Therefore, if you find that none of the employees of Defendant saw the Plaintiff prior to his injury, your verdict should be for Defendant."