RITCHEY, ETC., ET AL. *v.* BALTIMORE AND OHIO RAILROAD COMPANY

[No. 105, September Term, 1960.]

*Decided January 11, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Richard Whittington Whitlock,* with whom was *Gerald H. Cooper* on the brief, for the appellants.

*J. Sarsfield Sweeny* and *Fenton L. Martin,* with whom were *John S. Stanley* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The seven-year-old appellant was injured when his foot slipped under the wheels of a railroad freight car on which he had climbed. The accident occurred in Pennsylvania while the boy was visiting his grandmother. At the trial of his suit against the railroad brought in Baltimore, where he and his mother (his next friend) live, a verdict for the defendant was directed at the conclusion of the plaintiffs' case. Plaintiffs had served the defendant railroad with notice of intent to rely on foreign law, pursuant to Code (1957), Art. 35, Secs. 47-53, the Uniform Judicial Notice of Foreign Law Act, and the parties agree that the substantive law of Pennsylvania determines whether the direction of the verdict was proper.

Under Pennsylvania law a railroad owes a trespasser, adult or infant, only the duty not to wilfully and wantonly injure him. In this sense, wilful means intentional and wanton signifies a reckless disregard of the rights of others. So, if an employee of the railroad becomes aware that a trespasser is in a position of immediate or imminent peril, he must exercise reasonable care to avoid injuring him or his conduct will be wilful and wanton under the law of Pennsylvania. See *Davies v. Del., L. & W. R. Co.* (Pa.), 87 A. 2d 183; *Cover v. Hershey Transit Co.* (Pa.), 139 A. 266; *Falchetti v. Pennsylvania R. Co.* (Pa.), 160 A. 859; *Green v. Reading Co.* (C. A. 3rd), 183 F. 2d 716; *Tedesco v. Reading Co.* (Pa. Super.), 24 A. 2d 105; *Reagan v. Reading Co.* (Pa. Super.), 190 A. 412.[1]

---

1. The Maryland law as to trespassers is in accord generally with that revealed by the Pennsylvania cases just referred to. Jackson v. Pennsylvania R. Co., 176 Md. 1; Carroll v. Spencer, 204 Md. 387; Duff v. United States (C. A. 4th), 171 F. 2d 846, 850.

For situations in which the railroad employee saw the trespasser in a position of actual peril, or was put on notice that he was in such position, compare *Peden v. Baltimore & O. R. Co.* (Pa.), 188 A. 586; *Petrowski v. Philadelphia & R. Ry. Co.* (Pa.), 107 A. 381; *Frederick v. Philadelphia Rapid Transit Co.* (Pa.), 10 A. 2d 576; *Cheslock v. Pittsburgh Rys. Co.* (Pa.), 69 A. 2d 108; *Cover v. Hershey Transit Co., supra.* The Pennsylvania Court has said that greater care must be used to protect an infant trespasser from harm *after* he is discovered than to an adult, who is presumed to be better able himself to anticipate and guard against his peril. *Piepke v. Philadelphia & R. Ry. Co.* (Pa.), 89 A. 124; *Falchetti v. Pennsylvania R. Co., supra; Davies v. Del., L. & W. R. Co., supra.* This does not mean that an infant has a right to trespass or that the railroad owes him a greater duty than it does an adult before it discovers he is in peril.

Maryland and Pennsylvania apply the same rule in determining the sufficiency of the evidence where a verdict has been directed or a judgment n. o. v. entered for the defendant. The evidence and all reasonable inferences from it will be weighed in the light most favorable to plaintiff and all conflicts resolved in his favor. *Joffre v. Canada Dry, Inc.,* 222 Md. 1; *Davies v. Del., L. & W. R. Co., supra,* and *Shaw v. Pennsylvania R. Co.* (Pa.), 96 A. 2d 923. Considering the evidence as the rule requires (although appellants' own witnesses disagreed on basic points), we find the plaintiffs to have offered testimony that the infant plaintiff was visiting his grandmother in Gooseberry, a small settlement near Hyndman, Pennsylvania. With two older boys he decided to go to a shack or play hut, which stood in the woods some distance diagonally across the tracks from his grandmother's house. The hut had been put together by the neighborhood children. The three boys, wandering along a dirt road, reached a point some feet from the tracks where they stood and waved to the engineer of a long freight train as it went past them. The engineer waved back. The engine disappeared around a curve and then the train stopped, blocking passage across the tracks. The boys waited five or ten minutes, discussing whether to climb over

the train or wait until it left. Then the two older boys climbed onto a box car. The infant appellant followed, seizing the highest grab iron he could reach. As he began to pull himself up, the train "gave a yank," his foot slipped off the ladder and the wheel of the moving train crushed his foot. He did not hear any warning, any bell or whistle. The boys had played around the shack from time to time and on several occasions had waved at a passing train and had been waved to in return by a member of the train crew.

We think that under the Pennsylvania decisions, a finding that the railroad company violated any duty to the injured boy could not be properly predicated on the testimony produced in support of the plaintiffs' claims. The boy concededly was in a position of safety when he exchanged waves with the engineer of the engine which passed him. Indeed, he was not even shown to have then been on the property of the railroad. No railroad employee ever saw him on the railroad property, much less in a position of peril. Therefore, unless the claimants can show that the railroad was required to anticipate that the boy would leave a place of safety and move to a position of danger, they cannot prevail.

The Pennsylvania courts have mollified the rigors of the undiscovered trespasser rule in two situations, which are generally referred to as the "playground" and the "permissive way" doctrines. Under the playground doctrine if the evidence shows that children have openly, constantly and notoriously used the tracks or other property of the railroad to play on, the railroad is held to have impliedly authorized the use of its property as a playground and is required to anticipate the presence of children in the area and to use ordinary care to protect them from harm. The permissive way theory is that if the evidence shows the public to have openly, constantly and notoriously made use of a defined path across the tracks to such an extent that authorization by the railroad may be inferred, then the railroad must anticipate that persons will be on the track from time to time and must use ordinary care to avoid injuring them.

The appellants, in their brief and at the argument, expressly disclaim both the applicability of the playground and permis-

sive way doctrines and any reliance on them in this case. Nevertheless, they seem to seek to avail themselves of the benefits of those doctrines in that they claim the railroad was under a duty to have anticipated that the boys would leave the place of safety in which they were seen by the engineer and climb on the cars in an effort to cross the tracks and reach the play hut on the opposite side of the tracks.

We find no support in the Pennsylvania cases for this contention, indeed, on the contrary, a refutation of it. In *Scibelli v. Pennsylvania R. Co.* (Pa.), 108 A. 2d 348, 351-353, the infant plaintiff began to pull himself up on the ladder of a freight car in a standing train, when, without warning, the train gave a jerk and the child's leg was crushed. The accident occurred in "The Willows" a block in the city of Lebanon through which the tracks of the railroad ran. The Supreme Court of Pennsylvania found that the tracks and the surrounding area constituted a playground. The Court noted the usual rule that the railroad must exercise ordinary care in the operations of its trains through a playground but said that even if the railroad gave tacit consent to the use of its tracks as a playground, "the testimony will not support the claim that the defendant acquiesced in trespasses upon its trains." It added:

> "While there is some evidence that children had on occasion jumped on trains in the area of The Willows and had crossed over them when they were standing still for a period, the evidence was insufficient to establish this as a practice carried on with the knowledge and consent of the defendant. Considering the testimony most favorably to the plaintiffs in this respect, the boarding of trains was occasional only and there was no acquiescence in such conduct.
> \* \* \*
> "Counsel for the plaintiffs, however, insist that even if the train may not be considered a playground, the defendant owed a duty of care toward minor trespassers because it should have foreseen that children might attempt to board the train and taken measures to prevent such conduct.
> \* \* \*

"Under the facts of this case the impracticable and burdensome task of exercising police supervision over its trains would be out of proportion to the risk to minor trespassers involved.

\* \* \*

"We are obliged to hold that the unfortunate accident which occurred in the present case was not attributable to any negligence on the part of the defendant, but was proximately caused by the minor plaintiff's own impulsive act."

The Court found its earlier decision in *Shaw v. Pennsylvania R. Co.,* 96 A. 2d 923, 925 (referred to above), determinative. There, two freight trains had momentarily blocked a permissive crossing. A boy of twelve undertook to climb over the cars. The train started with a jerk and he was thrown under the wheels. He, other children and adults had on earlier occasions climbed over cars when they blocked the permissive path and the infant plaintiff testified that this had been going on for a long time and that employees of the railroad knew about it. The Court affirmed a judgment n. o. v. for the railroad, holding that it was not bound to anticipate and guard against the climbing on its cars. It said:

"Assuming that it is legally possible to establish a permissive crossing or a permissive right of way over defendant's railroad trains or freight cars, the evidence in behalf of the plaintiff was entirely insufficient to prove a continuous and notorious climbing over of railroad cars by the public and consequently was entirely insufficient to establish a permissive crossing of railroad cars."

We are impelled to the conclusion that the Pennsylvania law did not require the railroad to anticipate that the injured boy would leave a place of safety and climb onto its standing car. This being so, the railroad violated no duty it owed the boy since no employee of the railroad ever saw the boy in other than a position of complete safety.

*Judgment affirmed, with costs.*