**Arthur W. BOWLEY, Appellant,**

v.

**STOTLER & CO. and John Mulach c/o Stotler & Co., Appellees.**

**No. 84–1104.**

United States Court of Appeals, Third Circuit.

Argued Sept. 10, 1984.

Decided Jan. 8, 1985.

---

Garth, Circuit Judge, dissented and filed opinion.

Kenneth E. Aaron (Argued), A. Ronald Taxin, Philadelphia, Pa., for appellant.

Thomas F. Kolter (Argued), Chicago, Ill., Patricia L. Freeland, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees.

Kenneth M. Raisler, Gen. Counsel, Pat G. Nicolette, Whitney Adams, Deputy Gen. Counsels, H. Lowell Brown, Atty., Commodity Futures Trading Com'n, Washington, D.C., for amicus curiae.

Before GIBBONS and GARTH, Circuit Judges, and TEITELBAUM, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

 Arthur Bowley, a former customer of Stotler & Co., a commodities broker, appeals from an order denying his motion for judgment notwithstanding the verdict or a new trial, in his action seeking money damages from Stotler & Co. and John Mulach, a registered commodities broker employed by Stotler. Bowley's complaint alleges that Mulach engaged in churning of his account in violation of section 4b(A) of the Commodity Exchange Act as amended by the Commodities Futures Trading Commission Act, 7 U.S.C. § 6b(A) (1982)[1]. A jury returned a verdict in favor of the defendants on the churning count.[2] Bowley contends that a new trial should be granted because the court erred in instructing the jury. We reverse and remand for a new trial.

### I. The Evidence and the Verdict

Bowley was solicited by Mulach to open a commodities trading account with Stotler & Co., and did so on July 26, 1977, with an initial deposit of $2,000. A customer's agreement form was signed by Bowley, in which, in consideration of Stotler & Co. carrying an account as his broker for the execution of orders on various commodities exchanges, he made certain undertakings. Although the customer's agreement is silent on the issue, the evidence suggests and the parties agreed that the broker was to execute Bowley's orders, not to trade in his own discretion. The broker was, however, permitted to, and did, recommend trades. Under Mulach's guidance Bowley initially succeeded. The account grew from $2,000 to approximately $90,000 at the end of 1978. During that year, however, the type of trading changed. The number of commodities traded multiplied. The account reflected sophisticated marketing maneuvers such as spreads, straddles, and "scaled up" orders. It also reflected "day trades," which permitted control of

---

[*] Hon. Hubert I. Teitelbaum, Chief Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Private litigants may recover damages for violations of that statute. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

2. The complaint also alleges violation of Pennsylvania law. Although Bowley contends that he is entitled to a new trial on the state common law claims, he has not briefed any ground for setting aside the jury's verdict in favor of the defendants on those claims. Thus we do not consider them.

more contracts of greater value without increasing margin deposits, because margin determinations were made at the close of a trading day. The extent of Bowley's knowledge of and participation in making these trades was disputed at trial. It is clear, however, that he received daily confirmation slips of executed orders, and monthly composite statements. Moreover, Mulach and Bowley communicated frequently by telephone.

The commission earned by Stotler & Co. in 1978 was $28,880. In 1979 commissions grew to $115,065. During the entire life of the account commissions were paid on 3,855 "round turn" contracts, of which 2,101 were "day trades." By July 10, 1980, when Bowley's account was closed, it had decreased in value to less than $5,000. Stotler's commissions between July 26, 1977 and July 10, 1980 totaled $159,935.50.

The jury found that Mulach did not violate the Commodity Exchange Act, and a judgment was entered accordingly.

## II. The Churning Charge

■ The Commodities Futures Trading Commission, the federal regulatory agency responsible for the administration and enforcement of the Commodity Exchange Act, 7 U.S.C. § 1 et seq. (1982), defines churning as "the excessive trading of an account by a broker with control of the account, for the purpose of generating commissions, without regard for the investment or trading objectives of the customer." *In the Matter of Lincolnwood Commodities, Inc. of California*, 2 Comm.Fut. L.Rep. (CCH) ¶ 21,986, at p. 28,246 (Jan. 31, 1984). Under section 4b of the Act it is unlawful for a broker to cheat or defraud a customer, and both the courts and the Commission hold that churning amounts to such cheating or defrauding. *Johnson v. Arthur Espey, Shearson Hammill & Co.*, 341 F.Supp. 764, 766 (S.D.N.Y.1972), *Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417, 432 (N.D.Cal.1968), *modified in other respects*, 430 F.2d 1202 (9th Cir.1970); *Smith v. The Siegal Trading Company, Inc.*

[1980–82] Comm.Fut.L.Rep. (CCH), ¶ 21,105 at p. 24,453 (1980). The parties do not dispute that there is a private right of action for violations of section 4b of the Act, and on appeal they agree on the definition of churning.[3] That definition includes two elements: control of an account by a broker, and excessive trading. Bowley contends that the trial court erred in its charge on each element.

### A. *The Charge on Control of the Account*

This case involves alleged churning of a non-discretionary account; that is, an account over which the broker was not formally granted by the customer sole authority to make trading decisions. Thus Bowley attempted to prove that he had effectively surrendered *de facto* control to Mulach. In doing so he relied on case law to the effect that a finding of control is not dependent upon the account being formally labeled discretionary, but is based on who in fact is making the trading decisions. *E.g., Newburger, Loeb & Co., Inc. v. Gross*, 365 F.Supp. 1364, 1371 (S.D.N.Y.1973); *Hecht v. Harris, Upham & Co., supra*, 283 F.Supp. at 432–33. Bowley therefore requested that the court charge:

The question for you to decide is "who, in fact, was making the decisions" in the account. The following are factors you may take under consideration which may tend to demonstrate control, but the list is not meant to be exhaustive:

1. A lack of customer sophistication;

2. A lack of prior commodity trading experience on the part of the customer and a minimum of time devoted by him to his account;

3. A high degree of trust and confidence reposed in the Associated Person by the customer;

4. A large percentage of transactions entered into by the customer based upon the recommendation of the Associated Person;

---

**3.** At trial the defendants sought an instruction that there were three elements of a churning offense: control, excessive trading, and intent to defraud.

5. The absence of prior customer approval of transactions entered into on his behalf;

6. The education and experience of the customer and the Associated Person; and

7. The opportunity and availability of the parties to trade.

A 65 (citation omitted). Throughout the trial the defendants vigorously opposed the adoption of a *de facto* test for control, and they opposed Bowley's requested instruction to that effect. The court declined to give Bowley's instruction in the form requested. Instead the court instructed:

But the key to whether or not Mr. Bowley or Mr. Mulach had control, it seems to me, is whether the person you consider with the right to say, "Go forward," also had the right to refuse a trade.

Did the person who had the right to say, "trade," also have the right to refuse, or did that rest in someone else? Did Mr. Bowley, in effect, give that over to Mr. Mulach by rubber-stamping everything? Or did Mr. Mulach never accept in any trading circumstance the right to refuse to trade?

But, the right to refuse, alone, will not be sufficient. It is the *right to refuse coupled with a willingness to exercise it* if under all the circumstances the objectives of the customer would not be fulfilled. That is the true test.

The right to refuse to trade, coupled with a willingness to exercise that right to refuse if upon consideration of the objectives and all the factors it would not be in the best interest of those objectives to go forward. Whoever had the *right to refuse to trade coupled with that willingness* is the person in control, and that is what you have to decide.

Did Mr. Bowley, in addition to having knowledge of the objectives, did he consider all the factors? Did he have a *right to refuse to trade?* And was he willing to say, "Don't trade, don't sell," if he thought his objectives wouldn't be served? If you think he possessed that authority, he had control of the account.

If, on the other hand, he agreed to everything that Mr. Mulach recommended, and *Mr. Mulach had the right to refuse* and was *willing to exercise that decision*—do not sell or do not buy at a price, or that month or that commodity—and he had a willingness to do that if he thought Mr. Bowley's objectives wouldn't be served, then Mr. Mulach had control.

A 83–85 (emphasis supplied).

Bowley, and the Commodities Futures Trading Commission, amicus curiae, contend that this charge was erroneous, because it emphasized that the key element in determining control was "the right to refuse to trade." In a non-discretionary account, they urge, a broker never has the right to refuse to trade, but must place an order if his customer directs him to do so. Thus under the court's test for control, they contend, a broker never could exercise *de facto* control over an account, regardless of the broker's relationship with the customer or the customer's capacity to exercise independent judgment.

The emphasis upon the broker's non-existent right to refuse to trade is not the sole objection by Bowley and the Commission to the court's instruction on control. They contend, as well, that by refusing to instruct as Bowley requested the court failed to instruct the jury to consider all of the relevant factors tending to show *de facto* control of the account. Although requested to do so, the court did not direct the jury to consider Bowley's sophistication in commodity trading, his background, education, and prior experience in commodities trading, or the time and attention he devoted to trading in the account. The requisite instruction tracked the list that the Commission has identified as factors that the finder of facts should consider as tending to demonstrate control. *Ball v. Shearson Hayden Stone, Inc.* [1980–82] Comm.Fut.L. Rep. (CCH) ¶ 21,184 at p. 24,874 (1981); *Smith v. The Siegel Trading Co., Inc.* [1980–81], Comm.Fut.L.Rep. (CCH), ¶ 21,-

105 at p. 24, 454 (1980). *See Carras v. Burns,* 516 F.2d 251, 258–59 (4th Cir.1975); *Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069–70 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978).

### B. *The Charge on Excessive Trading*

■ Whether there has been excessive trading in an account is a question of fact which cannot be determined by any universally applicable precise formula. *Booth v. Peavey Company Commodity Services,* 430 F.2d 132, 134 (8th Cir.1970); *Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417, 435 (N.D.Cal.1968), *modified in other respects,* 430 F.2d 1202 (9th Cir.1970). There are, however, indicia of excessive trading that "may aid the fact-finder by introducing some measure of objectivity or certainty into an otherwise recondite subject." *Costello v. Oppenheimer & Co., Inc.,* 711 F.2d 1361, 1369 (7th Cir.1983). These indicia include the annualized commission-to-equity ratio, the turnover rate, and a pattern of in-and-out day trading. Bowley requested that the court instruct the jury on the application of the annualized commission-to-equity ratio, and other factors, such as the number of day trades, the number of overnight trades, and the short duration of trades. Instead the court charged:

> Excessive trading means something that is in excess of something else. Excessive speed means over something, over a certain speed limit or whatever it is. So, excessive trading means something that is in addition to some standard or norm. So you have to decide whether there was excessive trading.
>
> In this context you have to consider the objectives of the customer. What were Arthur Bowley's objectives in this account? In light of those objectives, was it traded excessively?
>
> That is to say, you should consider the trading of the account in the period you are considering, the size of the account, you should consider the knowledge and the interest of the customer in the ac-

count in regard to the manner in which trades should go forward.

> There has been testimony about commodities markets and months that are selected and not selected. You have to determine from the evidence the goals or objectives of the customer, and then determine, in light of those goals and objectives, whether or not the account was excessively traded.
>
> The mere fact that a lot of transactions took place does not mean that automatically it is excessive, but that is a factor to be considered.
>
> The mere fact that the character may have changed, under the evidence, from this kind of trading to that kind of trading, from overnight to day trading, or whatever, they are all factors to be considered, and it is your job to say whether or not you believe that at any time from 1977 to the middle of 1980 this account was excessively traded.

In contrast to their objection to the charge on control, Bowley and the Commission do not contend that the quoted charge on excessive trading is affirmatively misleading as well as incomplete. They complain only that it is incomplete because it failed to call the jury's attention to those objective indicia of excessive trading of which there is record evidence.

### III. Objections to the Charge Were Preserved

The defendants concede that Bowley preserved his objection to the charge on excessive trading. They contend, however, that he did not make a timely objection to the instruction on control, because the objections now relied upon were not called to the trial court's attention before the jury retired. Fed.R.Civ.P. 51. Bowley responds that it was not necessary to renew his objection to the control charge because he had already clearly presented his position on that issue and the court had ruled definitively. Fed.R.Civ.P. 46.

■ In this circuit it is clear that by filing and obtaining a ruling on a proposed instruction a litigant has satisfied Rule 51.

We have held that Rule 51 "is designed to preclude counsel from assigning for error on appeal matter at trial which he did not fairly and timely call to the attention of the trial court." *Stilwell v. Hertz Drivurself Stations, Inc.,* 3 Cir., 1949, 174 F.2d 714, 715; *Alcaro v. Jean Jordeau, Inc.,* 3 Cir., 1943, 138 F.2d 767, 771. But it is likewise true that "there is no good reason for applying the rule so indiscriminately as to prevent counsel from pointing out on appeal matter which he did endeavor to identify to the trial court and which he had every reason to believe the court fully comprehended when granting an exception."

*Green v. Reading Co.,* 183 F.2d 716, 719 (3d Cir.1950). Rule 51, which requires an objection "before the jury retires to consider its verdict" must be read with Rule 46, which provides that "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor ...." *See United States v. 564.54 Acres of Land, More or Less,* 576 F.2d 983, 989–90 (3d Cir.1978); *Brown v. Avemco Investment Corp.,* 603 F.2d 1367, 1370–75 (9th Cir. 1979); *Stewart v. Ford Motor Co.,* 553 F.2d 130, 139–41 (D.C.Cir.1977); *Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland,* 202 F.2d 794, 800–01 (7th Cir. 1953); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 46.01 (2d ed. 1982); A.C. Wright & A. Miller, Federal Practice and Procedure, § 2553 at 639–40 (1971). When ruling on the requested instructions on control the court stated:

> To the extent to which your requests are denied, the record, by my ruling now, will reflect the fact that you have objected and you are preserving and [sic] exception. Actually you have an automatic exception to every adverse ruling, right?

Transcript 812. Thus the trial court was well aware of the relationship between Rule 51 and Rule 46, and counsel was entitled to assume that he need not renew objections already ruled upon. Later the court advised counsel that the charge would include a statement about the right to refuse to trade. Transcript 893. At that point the court stated "your written points for charge are refused, Mr. Kolter, to the extent that they are inconsistent with what I have just said." Transcript at 894. The court then charged as quoted in Part I A above, and no post-charge objections were made until after the verdict.

On this record it cannot seriously be contended that Bowley failed to preserve his objection to the incompleteness of the charge on control. The elements which the Commission deems relevant were called to the court's attention, and were specifically rejected. Bowley was told he had objected and his objection was preserved. Indeed the defendants do not seriously argue otherwise. Rather they contend only that the objection to the inclusion in the charge of the right to refuse to trade element was not preserved, because the requested instruction did not specifically address that element. This argument seems to us, on this record, hardly fair. The requested instruction and the proposed charge were plainly inconsistent, since the requested instruction would have focused the jury's attention on factors other than the right to refuse to trade. Bowley's counsel was told explicitly that the requested points for charge were refused "to the extent that they are inconsistent with what I have just said." It was plain, by then, that the court's and Bowley's approaches to the issue of control were fundamentally different. We do not believe Bowley waived his objection to that fundamental difference.

Moreover, even if a waiver could be constructed from the contents of the record that would not end the inquiry. "[W]e have the discretion to review instructions *sua sponte* if the error is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice." *564.54 Acres, supra,* 576 F.2d at 987. *See Ratay v. Lincoln National Life Insurance Co.,* 378 F.2d 209, 212 (3d Cir.) (erroneous in-

struction on critical issue), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); *Pritchard v. Liggett & Myers Tobacco Co.,* 350 F.2d 479, 486 (3d Cir.1965) (review instruction to prevent miscarriage of justice), *cert. denied,* 386 U.S. 1009, 87 S.Ct. 1350, 18 L.Ed.2d 436 (1967).

In the situation here presented, we must in any event consider the omitted elements of the charge on control for the omissions were unquestionably objected to. Had the omissions been included, they would clearly have been inconsistent with the court's repeated emphasis on the right to refuse to trade. Thus even if we were to agree that the objection to the right to refuse to trade language was waived, on this record the exercise of discretion to consider the objection *sua sponte* would be particularly appropriate. We find no waiver of the objection, but if we did we would consider it.

## IV. The Merits

■ As noted in Part I above, churning occurs when a broker with control of an account engages in excessive trading for the purposes of generating commissions. The defendants contend that the instructions, both on control and on excessive trading, adequately informed the jury on the appropriate issues.

### A. *Control of the Account*

The defendants urge that the instruction on control of the account, considered as a whole, in light of the evidence, fairly and adequately defined for the jury that element of the churning offense. They point out that the court did inform the jury that mere "rubber stamp" acceptance by Bowley of Mulach's recommendations would not constitute control by Bowley. Moreover the court informed the jury that a trading decision consisted of knowing the trading objective, considering market factors such as type of commodity and buying strategy, and deciding whether or not to go forward with the trade.

As Bowley and the Commission point out, however, these correct parts of the charge were insufficient to overcome the court's subsequent repeated emphasis upon

the element of right to refuse to trade. For all intents and purposes that part of the charge required that the jury find for the defendants unless the account was discretionary rather than non-discretionary. The prohibition on churning applies to both types of account. If the account is, as here, non-discretionary, the determination of a broker's *de facto* control involves a relatively sophisticated analysis of the evidence. It is likely that by focusing the jury's attention on the irrelevant question of whether Mulach had the right to refuse to trade, the court diverted its attention from the relevant considerations.

Moreover, even aside from the error in charging on right to refuse to trade, by omitting from the charge specific reference to the factors which the Commission has identified as relevant on the issue of *de facto* control, the court left the jury without guidance about the significance of much of the evidence on which Bowley relied. Bowley was entitled to an instruction which fairly apprised the jury of his theory of the case on the issue of *de facto* control of the account. We agree with him and with the Commission that the charge as given did not adequately present that theory.

In support of the charge the defendants rely on *Follansbee v. Davis, Skaggs & Co., Inc.,* 681 F.2d 673 (9th Cir.1982), but that case lends them no assistance. The *Follansbee* case was tried to the court, not to a jury, and thus presented no jury instruction issue. The court of appeals set aside a judgment in favor of the plaintiff on the ground that the trial court's findings of fact on control of the account were clearly erroneous. Here the trial court found the evidence on control sufficient to go to the jury, and the defendants do not urge that it was not. The instruction that Bowley requested, moreover, was consistent with the legal standard for control which the Ninth Circuit Court of Appeals applied in *Follansbee*. When the account is non-discretionary, Judge Haynsworth observed, "[t]he touchstone is whether or not the customer has sufficient intelligence and

understanding to evaluate the broker's recommendations and to reject one when he thinks it unsuitable." *Id.* at 677. The requested instruction would have correctly focused the jury's attention on Bowley's intelligence and understanding.

We conclude, therefore, that the court's charge on control of the account was inadequate in both respects complained of. It erroneously included multiple references to a right on the part of the broker to refuse to trade, and it omitted references to those factors relevant to the issue of *de facto* control.

### B. *Excessive Trading*

■ The defendants also contend that the charge on excessive trading was adequate. Since our ruling on the control of the account portion of the charge requires a new trial, the sufficiency of the excessive trading instruction is not necessarily dispositive of this appeal. The case must be retried, however, and thus we do address that portion of the charge as well.

The Commission has held that a commission-to-equity ratio is a highly relevant objective indicator in determining whether trading was conducted merely to earn commissions for the broker, because that ratio reflects the amount of profit that would have to be earned during a period just to pay for commissions. *In the Matter of Lincolnwood Commodities, Inc. of California*, 2 Comm.Fut.L.Rep. (CCH) ¶ 21,986, at p. 28,248–49 (1984). Bowley presented expert testimony that ratios of 200 to 225% were indicators of excessive trading. The ratio in his account, according to Stotler's experts, was 241.6%. Bowley's experts testified it was as high as 253%. Bowley requested an instruction:

> Although no precise rule or formula can give [sic] used to prove excessiveness in all cases, nevertheless certain approaches have become well accepted. The most widely used method in commodities churning cases is the annualized commission to equity ratio. Generally an annualized commission to equity ratio

which exceeds 200% will support a finding of churning.

The trial court refused to give this instruction as requested. That refusal was proper, since the last quoted sentence sought, in effect, an endorsement of the testimony of plaintiff's expert. But the trial court declined to include *any* mention of the commission-to-equity ratio.

Bowley also sought to have the jury's attention called to other objective indicia of excessive trading, requesting an instruction:

> Other factors should be considered along with the [commission-to-equity] ratio above to help show excessive trading. You should consider the following:
>
> 1. The account should be viewed in its entirety;
> 2. The number of day trades;
> 3. The large numbers of overnight trading; and
> 4. Short term duration trades.

A 64. Rather than emphasizing that some of these objective indicia of excessive trading were, if found, significant, the court charged:

> The mere fact that a lot of transactions took place does not mean that automatically it is excessive, but that is a factor to be considered.
>
> The mere fact that the character may have changed, under the evidence, from this kind of trading to that kind of trading, from overnight to day trading, or whatever, they are all factors to be considered, and it is your job to say whether or not you believe that at any time from 1977 to the middle of 1980 this account was excessively traded.

A 76. Bowley and the Commission urge that this instruction tended to deemphasize rather than emphasize the legal significance of the objective indicia of excessive trading.

We agree that the charge on excessive trading may have tended to deemphasize the significance of the objective indicia of excessive trading present in the record. That deficiency, standing alone, might not be a ground for a new trial. When cou-

pled, however, with the court's refusal to mention that the commission-to-equity ratio was significant, the charge as a whole failed to provide the jury with an appropriate analytical framework for determining whether there was excessive trading in the account.

### V. Conclusion

The court's instructions on both elements of the churning cause of action, control of the account, and excessive trading, were inadequate. Bowley is, therefore, entitled to a new trial. The judgment in favor of the defendants will be reversed and the case remanded for a new trial.

GARTH, Circuit Judge, dissenting:

The issue on which I part company with the majority involves the "control" issue of Bowley's appeal. Bowley contends that Mulach, the account executive, had *de facto* control of his trading account and that Mulach, utilizing that control, churned Bowley's security account to Bowley's detriment. Mulach, on the other hand, was consistent in asserting that Bowley had the right to control the account by refusing recommendations made by Mulach to either buy or sell, and that indeed, by the time of the alleged churning activity, it was Bowley himself who was initiating the trading activity. Hence the factual issue was drawn as to who had control of the account. All other claimed errors were subordinate to this overriding question.

The issue thus became one for the jury to decide pursuant to the instructions given to it by the court. Accordingly, we must focus on the court's charge, and the objections and lack of objections to that charge. The majority holds that Bowley, by objecting to one aspect of the charge, must be deemed to have preserved his objection to all aspects of the charge. Alternatively, the majority holds that even without an objection to the court's charge, Bowley has preserved this critical issue for appeal.

Because I do not believe that the district court was properly alerted by Bowley's objection to the error that Bowley now claims, *see United States v. Gibbs*, 739

F.2d 838 (3d Cir.1984), and because the error asserted by Bowley is neither fundamental nor did it cause a miscarriage of justice, I would hold that Bowley had failed to preserve the issue of the control instruction for appeal. Thus, with full recognition of the record as developed at trial, I would affirm the district court. I therefore dissent.

### I.

Rule 51 of the Federal Rules of Civil Procedure mandates that:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The purposes of this Rule are twofold. First, it prevents the assertion of an objection as grounds for a new trial unless the district judge was given the opportunity to correct the instruction before the jury. It thereby obviates the necessity of a new trial, if error in the charge had occurred. Second, it prevents counsel from covertly relying on an error to guarantee a new trial in case of an adverse verdict. *Fulton v. Chicago, Rock Island and Pacific R.R.*, 481 F.2d 326, 338 (8th Cir.), cert. denied sub nom. *Fulton v. Soo Line R.R.*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). With respect to the issue of control, which, as I have indicted is the dominant issue on this appeal, the district court charged as follows:

Did the person who had the right to say "trade," also have the right to refuse, or did that rest in someone else? Did Mr. Bowley, in effect, give that over to Mr. Mulach by rubber-stamping everything? Or did Mr. Mulach never accept in any trading circumstance the right to refuse to trade?

But, the right to refuse, alone, will not be sufficient. It is the right to refuse coupled with a willingness to exercise it if under all the circumstances the objectives of the customer would not be fulfilled. That is the true test.

The right to refuse to trade, coupled with a willingness to exercise that right to refuse if upon consideration of the objectives and all the factors it would not be in the best interest of those objectives to go forward. Whoever had the right to refuse to trade coupled with that willingness is the person in control, and that is what you have to decide.

Did Mr. Bowley, in addition to having knowledge of the objectives, did he consider all the factors? Did he have a right to refuse to trade? And was he willing to say, "Don't trade, don't sell," if he thought his objectives wouldn't be served? If you think he possessed that authority, he had control of the account.

If, on the other hand, he agreed to everything that Mr. Mulach recommended, and Mr. Mulach had the right to refuse and was willing to exercise that decision—do not sell or do not buy at a price, or that month or that commodity—and he had a willingness to do that if he thought Mr. Bowley's objecties wouldn't be served, then Mr. Mulach had control.

In effect, the court misspoke in the latter half of its charge. In the first part of its charge the court was clearly correct. The district court judge stated that if the jury found Bowley had the right to refuse to trade, then Bowley had control. The judge then erroneously instructed the jury that if it found that Mulach had the right to refuse to trade, then Mulach would have control. By definition, of course, this could never have occurred, since it was not disputed that the account opened by Bowley was a non-discretionary account, i.e., that Mulach had no discretion, and therefore Mulach could not "refuse" to trade as a matter of law.

There can be no question but that had Bowley's counsel called this misstatement to the district court's attention, it would have been immediately corrected. Indeed, a fair reading of the charge indicates that the district court was not delivering a considered substantive instruction at this point, but was rather phrasing his charge in a parallel form which he apparently considered appropriate.

The district court judge, after his charge, then invited objections of counsel at a sidebar before the jury retired. Bowley's counsel, however, did not object to that portion of the court's instruction which made control contingent on Mulach's right to refuse to trade. He did object to the charge defining a discretionary account and, based on that objection, the court delivered a curative instruction. After the corrective instruction, which did not deal with the issue of control, no objection was made. Had counsel made an objection at that point, the district court judge undoubtedly would have recognized his misstatement and cured any error by still another supplementary charge, thereby forestalling the need for either an appeal or a new trial.

Nor did Bowley's requested charge on the issue of control serve as a substitute for an objection to the court's charge on Mulach's right to refuse trades. *Fulton v. Chicago Rock Island and Pacific R.R. Co., supra.* Bowley's proposed charge did not deal with the "right to refuse" issue. It dealt only with other factors affecting control.

In the present context, it is Fed.R.Civ.P. 51, not Rule 46, which controls the issue on this appeal. Rule 46 does no more than indicate when an exception may be unnecessary. Rule 51, however, provides specifically that

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

It was the failure of Bowley to call specific attention to what he now labels objectionable that resulted in the challenged instruction remaining uncorrected. In my opinion, it was Bowley's obligation to call the attention of the court to the error which Bowley claimed and to do so in sufficient time so that the court could react appropriately. He did not do so and by not seeking to correct the court's charge, which he now challenges, he did not preserve this issue

for our review. *See United States v. Gibbs, supra.*

## II.

Since no objection to the right-to-refuse-to-trade charge was preserved, this charge is reviewable by this court only if it constitutes "plain error." See *United States v. Logan,* 717 F.2d 84, 91 (3d Cir.1983). Under this judicially created exception to Fed. R.Civ.P. 51, "this discretionary power [to review] should be exercised sparingly." *United States v. 564.54 Acres of Land, More or Less,* 576 F.2d 983, 988 (3d Cir. 1978); see *Trent v. Atlantic City Electric Co.,* 334 F.2d 847, 859 (3d Cir.1964). In order for the exception allowing review to apply, two conditions must obtain: first, the error must result in manifest injustice; and second, the error must be fundamental. See *Trent, supra,* 334 F.2d at 859. In my view, neither condition is present here.

In applying the first test, i.e., manifest injustice, the *Trent* court reviewed the evidence of record in that case to determine whether the verdict could be supported despite the erroneous instruction given. Manifest injustice would result only if the *evidence* could not support the verdict, not simply where a different *charge* might have resulted in a different verdict. According to the *Trent* court,

This court has on occasion reversed sua sponte on the basis of plain or fundamental error respecting the charge.... This discretionary power is exercised sparingly in order to prevent only what is deemed to be a miscarriage of justice. We need not express an opinion on whether the deficiency in the present charge constituted fundamental error within the meaning of our decisions for in any event under the facts and circumstances of this case, in our view the jury's findings as to the appellants' negligence cannot be said to manifest a miscarriage of justice. In regard to Deepwater and Gibbs and Hill, as is indicated infra, the evidence was more than sufficient to justify findings of negligence on their part even under a more properly detailed charge. 334 F.2d at 859.

Similarly, in the case before us, the evidence is clearly sufficient to support a finding, even under a proper charge, that it was Bowley, not Mulach, who had *de facto* control of the account. Thus, I find no manifest injustice. I therefore am not required to reach the question as to whether the court's error in its charge was fundamental. See *Trent,* 334 F.2d at 859. If forced to do so, however, I would hold that it was not.

In light of the balance of the court's charge in which it spoke to other issues which the jury might consider in determining control, such as, who was considering investment objectives and who was deciding to trade, and in light of the fact that it was Bowley who was in the best position to recognize the challenged error and who could have easily sought correction of the court's one misstatement and did not do so, I find the charged error to be one that does not rise to the level of importance we normally reserve for "plain error." In *Namet v. United States,* 373 U.S. 179, 190–91, 83 S.Ct. 1151, 1157, 10 L.Ed.2d 278 (1962), the Court concluded its opinion by stating:

No objection was ever made to this instruction, even though counsel for the petitioner did object to other aspects of the charge. Thus, we are not concerned with whether the instruction was right, but only whether, assuming it was wrong, it was a plain error or defect "affecting substantial rights" under Rule 52(b) of the Federal Rules of Criminal Procedure.

(citing to Rule 30 of the Federal Rules of Criminal Procedure). Rule 30 is the exact counterpart of Rule 51 of the Federal Rules of Civil Procedure and also requires that an objection "stat[e] distinctly the matter" objected to. It is evident to me that, on this record as a whole, no substantial rights of Bowley were affected by the court's charge.

Because I believe that the erroneous instruction on "right to refuse" is barred from review by Fed.R.Civ.P. 51, and that the other errors assigned do not of them-

selves warrant a new trial, I would affirm the judgment of the district court. Because the majority holds otherwise, I respectfully dissent.