Dona W. HOROWITZ, et al., Plaintiffs,

v.

**FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant.**

**Civil Action No. 93–192.**

United States District Court, E.D. Pennsylvania.

Nov. 27, 1996.

---

Paul A. Lauricella, Barbara R. Axelrod, Beasley, Casey, Colleran, Erbstein, Thistle & Kline, Philadelphia, PA, for plaintiffs.

Dean F. Murtagh, John P. Shusted, German, Gallagher & Murtagh, Philadelphia, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Dona Horowitz is the named beneficiary of a $1,000,000.00 life insurance policy which defendant Federal Kemper Life Assurance Company ("Kemper"), issued on the life of her now deceased husband, Dr.

Leonard N. Horowitz.[1] Following Dr. Horowitz's death, Kemper refused to pay the proceeds of the policy contending that Dr. Horowitz committed fraud by failing to disclose that he was dying of cancer in a December 20, 1991, amendment to the policy application. Plaintiffs brought suit to recover the insurance proceeds and defendant counterclaimed for rescission.[2]

The parties filed cross-motions for summary judgment. The Court granted plaintiffs' motion on Count III of the complaint, plaintiffs' breach of contract claim, and entered judgment in their favor for $1,000,-000.00.[3] The Court reasoned that pursuant to section 441 of Pennsylvania's Insurance Company Law of 1921, 40 P.S. § 441, Kemper was barred as a matter of law from asserting a fraud defense based on alleged misrepresentations in the application and December 20, 1991, amendment because of the undisputed failure of Frederick Raffetto, an independent insurance agent who sold Dr. Horowitz the Kemper policy, to physically attach the amendment to the policy at the time of delivery. *See Horowitz v. Federal Kemper Life Assurance Co.*, 861 F.Supp 1252, 1258–61 (E.D.Pa.1994), *aff'd in part and vacated in part*, 57 F.3d 300 (3d Cir. 1995).

On appeal, the Third Circuit reversed finding that the Court's interpretation of the term "attach" as used in section 441 was too restrictive. *See Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 305–07 (3d Cir.1995). The Third Circuit concluded that if after Dr. and Mrs. Horowitz read and signed the amendment, Mr. Raffetto had in fact placed the amendment inside a sleeve in the pocket binder which contained the policy and application and gave the binder to Dr.

Horowitz as defendant alleged, then the amendment was "attached" to the policy at the time of delivery within the meaning of section 441. *Id.* at 306. The Third Circuit remanded the case for trial on plaintiffs' breach of contract claim as well as on defendant's counterclaim for rescission.

Following an eight day trial, the jury answered special interrogatories finding that (1) Dr. Horowitz had not made material misrepresentations either knowingly or in bad faith in his initial application to Federal Kemper; (2) Dr. Horowitz or Mrs. Horowitz made material misrepresentations either knowingly or in bad faith in the December 20, 1991, amendment to the application to Federal Kemper; and (3) the December 20, 1991, amendment to the application was not attached to the application at the time Mr. Raffetto delivered the policy to Dr. Horowitz. (*See* Jury Verdict, doc. no. 98) The Court then entered judgment in favor of plaintiffs and against defendant.

Post-trial motions were subsequently filed, with defendant claiming various points of legal and trial error. For the reasons stated herein, defendant's motion for judgment as a matter of law or in the alternative for a new trial will be denied.

## I. STANDARD OF REVIEW

In ruling on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), the evidence in the case must be viewed in the light most favorable to the non-moving party, and every reasonable inference therefrom must be drawn in that party's favor. *See Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir.1992), *cert. denied*, 507 U.S. 921, 113

---

1. The facts of this case are thoroughly detailed in this Court's prior memorandum on the matter, *see Horowitz v. Federal Kemper Life Assurance Co.*, 861 F.Supp. 1252 (E.D.Pa.1994), *aff'd in part and vacated in part*, 57 F.3d 300 (3d Cir. 1995), as well as in the Third Circuit's review of that decision. *See Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300 (3d Cir.1995). Familiarity with these opinions is assumed for purposes of this memorandum.

2. The complaint was filed on behalf of Mrs. Horowitz, individually and as co-executrix of Dr. Horowitz's estate, and Alfred Camner, the es-

tate's co-executor. The complaint alleged that Kemper violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1—201–9.2 (Count I), acted in bad faith in violation of 42 Pa.C.S.A. § 8371 (Count II) and breached the parties' insurance contract (Count III).

3. The Court granted defendant's motion for summary judgment on Counts I and II. *See Horowitz*, 861 F.Supp. at 1261–62. This decision was affirmed by the Court of Appeals. *See Horowitz*, 57 F.3d at 307–08.

S.Ct. 1285, 122 L.Ed.2d 677 (1993); *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir.1976) ("The trial judge, in his review of the evidence, ... must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference"), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). It is impermissible to question the credibility of witnesses, or to weigh conflicting evidence as would a factfinder. *See Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir.1993). Applying these precepts, a jury verdict can be displaced by judgment as a matter of law only if "the record is 'critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief.'" *Dawson v. Chrysler Corp.*, 630 F.2d 950, 959 (3d Cir.1980) (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969)), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

Similar concerns restrict the Court's discretion in ordering a new trial pursuant to Federal Rule of Civil Procedure 59. "Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts." *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir.) (in banc), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). A new trial on the basis that the verdict is against the weight of the evidence can be granted " 'only where a miscarriage of justice would result if the verdict were to stand.'" *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993) (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991)). Where the proffered basis is trial error, "[t]he court's inquiry ... is twofold. It must first determine whether an error was made in the course of the trial, and then must determine whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Farra v. Stanley–Bostitch, Inc.*, 838 F.Supp. 1021, 1026 (E.D.Pa.1993) (citations and internal quotation marks omitted), *aff'd without op.*, 31 F.3d 1171 (3d Cir.1994); *see* Fed.R.Civ.P. 61. An error in jury in-structions must be so substantial that, viewed in light of the evidence in the case and the charge as a whole, " 'the instruction was capable of confusing and thereby misleading the jury.'" *Link v. Mercedes–Benz of N. Am. Inc.*, 788 F.2d 918, 922 (3d Cir.1986) (quoting *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984), *cert denied*, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985)).

## II. DISCUSSION

### A. The Jury's Verdict on the Attachment Issue Prevents Kemper from Rescinding the Insurance Contract on the Basis of Fraud.

Under Pennsylvania law, in order for Kemper to void its insurance policy with the Horowitzes on the basis of fraud, it must show "(1) that Dr. or Mrs. Horowitz's representations in the policy application and the application amendment were false, (2) that Dr. or Mrs. Horowitz knew their representations were false or made them in bad faith, and (3) that the representations were material to the risk insured." *Horowitz*, 57 F.3d at 304–05 (citations omitted). In satisfying its burden, however, Kemper is limited by section 441 of the Pennsylvania Insurance Company Law of 1921 which provides in relevant part,

[a]ll insurance policies ... in which the application of the insured ... form[s] part of the policy or contract between the parties thereto, or ha[s] any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant ...; and, unless so attached and accompanying the policy, no such application ... shall be received in evidence in any controversy between the parties to, or interested in, the policy....

40 P.S. § 441. Pursuant to section 441, if an insurer fails to attach the insurance application or any amendments thereto to the insurance policy at the time the policy is delivered, the insurer is barred from asserting any fraudulent misrepresentations contained in the application or the amendments as justification for its failure to pay the policy pro-

ceeds. *See Sandberg v. Metropolitan Life Ins. Co.*, 342 Pa. 326, 328–29, 20 A.2d 230, 231 (1941); *Frost v. Metropolitan Life Ins. Co.*, 337 Pa. 537, 12 A.2d 309 (1940); *Horowitz*, 57 F.3d at 305.

■ Following section 441's mandate, therefore, in the present case, because the jury found that the December 20, 1991, amendment to Dr. Horowitz's insurance application was not attached to the policy at the time of delivery, Kemper can not claim that anything contained in the application or the amendment allows it to avoid payment. Kemper does not argue otherwise, but instead contends that "[t]here is nothing in the statute which states that an insurer may not introduce other admissible evidence not contained in the application. No *case* states that an insurer may not introduce other evidence of fraud." [4] (*See* Def.'s reply to Pl.'s Response to Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 115 at 2) (emphasis in original). According to Kemper, here, this "other evidence of fraud" consists of "(a) the Horowitzes' awareness that they had an obligation to tell of any change in health and (b) the conscious decision by the Horowitzes' to evade fulfilling this duty to tell and (c) the actual evasion of telling the truth." (*Id.* at 4; *see also* Def.'s Mem.Law Supp.J. as Matter

of Law, doc. no. 112 at 36) Kemper's argument is without merit.

It is undisputed that all fraudulent communications made to Kemper by the Horowitzes regarding Dr. Horowitz's health were contained in Dr. Horowitz's initial insurance application and/or the Dec. 20, 1991, amendment thereto.[5] Accordingly, absent the application and the amendment, there are no misrepresentations by the Horowitzes to Kemper. So long as it can point to no misrepresentations by the Horowitzes outside of the application and the amendment, Kemper can not prove fraud.[6]

Kemper's reliance on *Guida v. Underwriters at Lloyd's*, 563 F.Supp. 1015 (E.D.Pa. 1983) (McGlynn, J.), is misplaced. In *Guida*, plaintiff brought suit against his insurer and insurance agent after the insurer refused to pay monies due to plaintiff under his insurance policy. Defendants contended that plaintiff was not entitled to the insurance proceeds because he had made material misrepresentations and omissions when he applied for the insurance. Plaintiff moved for summary judgment, arguing that section 441 precluded defendants from introducing any evidence relating to his alleged misrepresentations. The court denied plaintiff's motion

---

4. In its original memorandum in support of its current motion, without citation to authority, Kemper argued that "[t]he jury's finding that the amendment was not attached at the time of delivery does not affect the admissibility of Part B [of the original application]." (*See* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 40) Kemper retreated from this position in its reply memorandum, stating, "the jury's answers to the Court's interrogatory #3 precludes Federal Kemper from relying on the material misrepresentations in the application documents." (*See* Def.'s reply to Pl.'s Response to Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 115 at 5)

5. In fact, the jury found that Dr. Horowitz's initial application to Kemper did not contain any knowing or bad faith material misrepresentations.

6. The fraudulent actions alleged by Kemper at trial were Dr. Horowitz's inaccurate statements regarding his prior medical history on the initial application and the Horowitzes' failure to truthfully report the nature of Dr. Horowitz's health in the December 20, 1991, amendment. Kemper did not allege that any other misrepresentations were made to it which would entitle it to avoid

payment on the policy. Once the amendment and application are excluded, therefore, Kemper simply can point to no false statements made to it regarding Dr. Horowitz's health.

The case may be different if Kemper had evidence that apart from any false statements contained in the application and the amendment, the Horowitzes made false statements to Kemper concerning Dr. Horowitz's health or if Kemper could point to something aside from the application and amendment which obligated the Horowitzes to report on the changing nature of Dr. Horowitz's health. Here, however, Kemper's alleged "other evidence" of fraud consists solely of (1) the Horowitzes failure to tell Mr. Raffetto on December 20, 1991, about Dr. Horowitz's change in health—an omission which, without the application and the amendment, was not legally improper; and (2) the Horowitzes' conscious decision and their attorney's advice not to tell the truth—a plan which, without the application or amendment, Kemper can not argue the Horowitzes ever carried out. (*See* Def.'s reply to Pl.'s Response to Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 115 at 4; *see also* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 36)

finding that section 441 did not bar defendants from introducing evidence of material misrepresentations and omissions made by plaintiff when he applied for the policies at issue, but which were not contained in the application itself. *Id.* at 1019–1020. The court noted that when plaintiff arranged for the coverage at issue, he did not fill out or sign a formal application and, therefore, no application could have been attached to the policies when delivered to plaintiff as required by section 441. *Id.* at 1018–1019.

*Guida* is readily distinguishable from the present case. First, unlike the plaintiff in *Guida*, Dr. Horowitz filled out a formal written application for insurance. The *Guida* court specifically noted that in denying plaintiff's summary judgment motion, it was not relying on any cases involving formal written insurance applications or section 441, but rather on an 1895 case initiated under a statute similar to section 441 which, like *Guida*, also involved an oral insurance application. *See Id.* at 1019.

Additionally, even if the Court were to find *Guida* to stand for the proposition urged by defendant, i.e., that oral statements made by the insured or his agents to the insurer while seeking insurance are admissible under section 441, (*see* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 37–38), defen-

dant's argument would still fail because, in this case, defendant has produced no evidence of any oral misrepresentations made outside of the application and the amendment. Without the statements contained in the application and amendment, which Kemper is precluded form relying on by virtue of section 441, Kemper can point to no fraudulent statements made by the Horowitzes. *See supra* note 6.

### B. Kemper Failed to Preserve its Objections to the Jury Charge.

■ Kemper also challenges a number of points contained in the charge the Court delivered to the jury as errors and contends that these errors require that its motion for a new trial be granted. Defendant's argument is without merit. Kemper chose not to object to the charge after it was delivered to the jury, despite the Court's specific instruction that, under the Federal Rules, it must do so if it wished to preserve any objections to the charge for appeal.[7] Therefore, absent plain error, *see infra* section II. C., even if the Court agreed with Kemper that the jury charge was somehow erroneous, which it does not, Kemper has waived the right to assert any deficiencies in the charge as the basis for its new trial motion.

7. Immediately after the Court delivered its charge to the jury, the parties were called to sidebar and asked by the Court whether they had, "[a]ny objections to the charge." (*See* Tr. Jan. 22, 1996, doc. no. 108 at 130:21) After plaintiff's counsel, Mr. Lauricella, placed his objections on the record, the following exchange with Mr. Murtagh, defendant's counsel, occurred: *The Court:* "Okay. What about the defendants, any—" *Mr. Murtagh:* "Your Honor, I presume by your reading the instructions as given we're not waving (inaudible)." *The Court:* "Well, I don't want you to repeat—" *Mr. Murtagh:* "Right." *The Court:* "—all of your arguments, but I'd like you to put on the record what objections you have to the charge." (*Id.* at 131:23-25—132:1-4) Following some discussion on other points, the Court then told Mr. Murtagh, "[w]ell, the point is that the rules require that you do it now so that I can correct it, as Mr. Lauricella did. The reason, and you don't have to give me the entire reason, but, I mean, the procedure is for me to tell you before closing what it is that I'm going to charge. But, I don't think that you can now say, well, you know, it sounded good to me, but I want to—you know, I want to preserve that because if the verdict is

against you, I'm sure you'll have a hundred, or if it's for you, you won't have any. So, I think we need to—I mean, maybe substantial justice will require that, you know—I mean, there are plain errors and there are various other standards. But, I think that if you have an objection to the charge, I mean, I think the rules require that you make them now so that the trial judge can correct them in that procedure. But, as I said, you don't have to give a speech at this point. Do you have any objections to the charge?" (*Id.* at 134:7-23) Mr. Murtagh then replied, "I have no objection to the charge as given. But, there are—items—.... It's a complex case. That it could take me the same three hours to say they were included in the proposed points for ·charge." (*Id.* at 134:24-25—135:1-7) The Court then responded, "[w]ell, I don't know, maybe you changed the rules because that is what the rules contemplate. Okay. Do you want to put any on the record?" (*Id.* at 134:11-13) Mr. Murtagh's brief answer, which lasted barely several seconds, if that much, was designated "inaudible" in the trial transcript. (*Id.* at 134:14) The Court then stated, "[v]ery well" and moved on to other matters. (*Id.* at 134:15)

Federal Rule of Civil Procedure 51 governs the duty of the parties to place their objections to the jury charge on the record.[8] *See* Fed.R.Civ.P. 51. The Rule "explicitly requires" that in order to preserve an objection for appeal, the objection "must be taken at the close of the charge, 'before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.'" *Seman v. Coplay Cement Co.*, 26 F.3d 428, 436 (3d Cir. 1994) (quoting Fed.R.Civ.P. 51). The Third Circuit has noted, however, that an exception to the mandate of Rule 51 exists "where the district court judge gives explicit instructions to the parties to proceed otherwise." *Id.*[9]

According to the Third Circuit,

> [a]s the manager of a case, the lower court is in the best position to exercise its discretion in determining the most effective and efficient way of proceeding, given the myriad number of ways of conducting a charge conference. As we noted in *United States v. Agnes*, 753 F.2d 293 (3d Cir.1985), the failure to follow rigorously the requirements of Rule 51 does not preclude appellate review when there is "*express* permission by the district court for counsel to incorporate by reference objections made during the charge conference." *Id.* at 301 n. 11 (emphasis added); *see also Bowley v. Stotler & Co.*, 751 F.2d 641, 647 (3d Cir. 1985) (finding preservation where district

court granted counsel "automatic exception to every adverse ruling"). The requirement that there be an express determination by the lower court that Rule 51 will not be applied as written serves the purpose of allowing the trial judge to direct the charging process in the manner the court deems most efficient, while also creating a reviewable record for appellate purposes of the matters as to which timely objections were made.

*Id.* (footnote omitted) (emphasis in original).

In this case the Court did not give defendant "express permission" to incorporate its objections to the jury charge by reference. Rather, the Court expressly told defendant's counsel that if he had objections to the charge, under the Rules, he had to state his objections on the record before the jury retired. Defendant's counsel having failed to do so, under *Seman*, none of the objections to the jury charge which defendant now asserts were preserved.[10]

### C. The Jury Charge Contained No Plain Error.

Kemper argues that even if its objections to the jury charge were not preserved, it is entitled to a new trial because the jury charge contained plain error. As the basis for its plain error claim, Kemper points to the Court's charge on the attachment issue,

8. Federal Rule of Civil Procedure 51 provides, in relevant part, as follows:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Fed.R.Civ.P. 51.

9. In *Seman v. Coplay Cement Co.*, 26 F.3d 428 (3d Cir.1994), the Third Circuit found the petitioner had not waived its objections to the jury charge where (1) "counsel for both parties were given express permission by the district court at the *in camera* charging conference to incorporate by reference objections made during that conference" and (2) the day after the charging conference the court stated in open court, "as I said yesterday when we were discussing the charge in chambers, after the charge is finished, after I finished giving the charge, you don't need to take any exceptions to anything that you've already raised and I've ruled on. Just anything knew [sic]." *Id.* at 436.

10. The cases cited by defendant on this point,— *Bowley v. Stotler & Co.*, 751 F.2d 641 (3d Cir. 1985) and *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321 (3d Cir. 1985)—both decided prior to *Seman*, are distinguishable. In *Bowley*, the district court told the parties that regarding their proposed jury instructions, "[t]o the extent to which your requests are denied, the record, by my ruling now, will reflect the fact that you have objected and you are preserving and [sic] exception." *Bowley*, 751 F.2d at 647. The Third Circuit held that petitioner had preserved its objections, finding that petitioner's objections were called to the court's attention and were specifically rejected with assurance that the objections would be preserved. See *Id. American Home Assurance* involved "whether a denial of a motion in limine is sufficient to preserve for purposes of appeal the specific issue raised in the motion." *American Home Assurance*, 753 F.2d at 324. Neither of these cases have application here.

in which the Court, after quoting from section 441, instructed the jury as follows:

> Under Pennsylvania law, if an insurance company fails to *physically attach* the application or any amendments to the policy at the time the policy is delivered, the insurance company is barred from asserting as a defense any fraudulent misrepresentations contained in the application or the amendment.

> According to Webster's Third New World Dictionary, to attach means: "To make fast or join as by string or glue, bind, fasten or tie." Attachment also includes binding or joining documents in a device with pockets; for example a binder, designed to contain them together.

> Under Pennsylvania law, the failure to attach an amendment to the policy of insurance prevents the amendment from being considered as part of the contract. If you find that the amendment here at issue was not attached to Dr. Horowitz' life insurance policy, then I instruct you as a matter of law that you may not consider any statements made by the insured Leonard Horowitz or his wife, Dona Horowitz in the amendment as grounds for voiding his insurance policy with Federal Kemper. If, on the other hand, you find that the amendment was attached and that the amendment contained material misrepresentations as to the health of Dr. Horowitz, as I discussed earlier, then you must return a verdict for the defendant.

(*See* Tr. Jan. 22, 1996, doc. no. 108 at 126:15–127:12 (emphasis added)) Although Kemper concedes that its "attorneys did not object to the attachment charge at any time during the trial," citing to the Third Circuit's finding that section 441 does not require physical attachment, *see Horowitz*, 57 F.3d at 306, Kemper now argues that the Court's reference to "physical" attachment once during the charge was a plain error that requires a new trial. (*See* Def.'s reply to Pl.'s Response to Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 115 at 8–9; *see also* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 53–55) Kemper's argument is not persuasive.

When a party fails to preserve an assigned error for review, the standard for reversal is plain error. *See Fashauer v. New Jersey Transit Rail Operations, Inc.,* 57 F.3d 1269, 1289 (3d Cir.1995). "Plain errors are those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Osei–Afriyie v. Medical College of Pennsylvania,* 937 F.2d 876, 881 (3d Cir. 1991) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). The Third Circuit has instructed that the "power to review errors in jury instructions which were not objected to at trial should be exercised sparingly; otherwise we risk emasculating the important policies served by Rule 51." *Fashauer,* 57 F.3d at 1289 (citations, internal quotation marks and internal indication of alteration omitted); *see also Osei–Afriyie,* 937 F.2d at 882 (citing *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)) (Supreme Court has cautioned that plain error doctrine should be used "sparingly"). Only if the error "is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and [the] failure to consider the error would result in a miscarriage of justice," should the error be noticed. *Fashauer,* 57 F.3d at 1289 (citations and internal quotation marks omitted).

■ Following these teachings, the Court concludes that its single reference to "physical" attachment during the course of a lengthy charge did not constitute plain error. Immediately following its reference to "physical" attachment, the Court quoted language from the Third Circuit's prior opinion in this case which defined attachment to include "bind[ing] or join[ing] ... documents in a device with pockets [; for example] a binder[,] designed to contain them together." (*See* Tr. Jan. 22, 1996, doc. no. 108 at 126:23–25 (quoting *Horowitz,* 57 F.3d at 306)) Thereafter, all references made by the Court in the instruction to the term attachment did not include the qualifier "physically." Under these circumstances, the Court cannot say that its attachment instruction left the jury "without adequate guidance on a fundamental question." *Fashauer,* 57 F.3d at 1289; *see Link,* 788 F.2d at 922 ("once the court

has given an instruction, we must determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury" (citations, internal quotation marks and internal indication of alteration omitted)). Thus, even if it was error for the Court to refer to "physical" attachment once during the charge, such error was harmless and, consequently, does not require a new trial. *See Fashauer,* 57 F.3d at 1289; *see also Link,* 788 F.2d at 922; Fed.R.Civ.P. 61.

◾ In addition to its argument regarding the Court's attachment instruction, Kemper contends that, "[i]t was error for the Court to conclude as a matter of law and so instruct the jury that a contract came into existence between the parties." (*See* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 10) As is the case with the other objections Kemper now raises to the Court's jury charge, counsel for Kemper did not object to the Court's instruction on this point and, therefore, such objection has been waived. *See supra* section II. B. Nonetheless, the Court will review its instruction to the jury that a contract existed between the parties for plain error.

In support of its objection, Kemper avers that, because it was not informed of the true state of Dr. Horowitz's health, there was no "meeting of the minds" between Kemper and the Horowitzes and thus, an enforceable insurance contract between the parties was never formed. (*See* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 10–21) The Court disagrees.

That the parties had not reached a "meeting of the minds" is just another way of saying that the parties were not in agreement concerning the terms of their bargain. *See* Arthur L. Corbin, 1 *Corbin on Contracts* § 4.13 (Joseph M. Perillo rev. ed. 1993); *see also* Samuel Williston, 1 *Williston on Contracts* § 4:1 (Richard A. Lord 4th ed. 1990). Contrary to this principle, however, Kemper's position has never been that it and the Horowitzes had a materially different conception of what the terms of Dr. Horowitz's insurance contract meant, i.e., that somehow the Horowitzes, but not Kemper, believed that the Horowitzes would be entitled to recover under the policy even if, at the time the policy was issued, the Horowitzes knew Dr. Horowitz was dying of cancer and failed to disclose this condition to Kemper. Rather, Kemper has contended that, as a result of the Horowitzes deceit, it was wrongfully induced into accepting the Horowitzes' offer to pay insurance premiums in return for insurance coverage.[11] It was precisely the Horowitzes' understanding, the same understanding as Kemper's, that under the terms of the policy a person dying of cancer was not eligible for life insurance coverage, which motivated the Horowitzes' perfidy.

While, as Kemper correctly points out, "evidence of fraud in the inducement may be shown to avoid an alleged contract," *Betz Lab., Inc. v. Hines,* 647 F.2d 402, 408 (3d Cir.1981); *see also Mellon Bank Corp. v. First Union Real Estate and Mortgage Investments,* 951 F.2d 1399, 1408 (3d Cir.1991) (same), this legal principle is of no assistance to Kemper's cause. As discussed above, *see supra* section II. A., without the application

11. Kemper contends that the Court's instruction that a contract existed between the parties was additionally erroneous because "the Court confused Pennsylvania law regarding offer and acceptance of insurance contracts," when it instructed the jury that Kemper was the offeror of the insurance policy and that Dr. Horowitz was the offeree. (*See* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 17–18) Whether Dr. Horowitz offered to purchase insurance from Kemper and Kemper accepted or Kemper offered to sell insurance to Dr. Horowitz and Dr. Horowitz accepted, however, is analytically of no moment to the present case. In fact, during his opening statement, counsel for Kemper argued a position precisely opposite to that which Kemper now urges, stating,

> [s]imply put, Kemper ultimately *offered* insurance on an individual who was believed to be a healthy 44–year–old man.... As it turned out, unknown to Kemper, they were *offering* insurance and insurance was being accepted by a terminally ill man....

(*See* Tr. Jan. 11, 1996, doc. no. 110 at 24:19–24 (emphasis added)) Who was the offeror and who was the offeree has never been at issue and has no bearing on the outcome of this case. Therefore, even if the Court erroneously explained to the jury that Kemper was the offeror and not the offeree as Kemper now contends, such error was harmless.

and the amendment, which Kemper may not rely upon due to the operation of section 441, Kemper has no evidence of any misrepresentations made the Horowitzes to Kemper and, therefore, it is unable to show fraud. Since Kemper cannot show fraud, it may not void the insurance agreement. The Court's instruction that a contract existed between the parties was, therefore, not in error.

### D. Jury Interrogatory No. 1 Contained No Error.

■ Kemper argues that jury interrogatory No. 1 was "unduly vague and restrictive." (See Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 51–52) Jury interrogatory No. 1 read as follows: "Do you find that Dr. Horowitz made material misrepresentations either knowingly or in bad faith in his initial application to Federal Kemper?" (See Jury Verdict, doc. no. 98) The question was answered in the negative. According to Kemper, the Court's use of the term "initial application" "completely misled" the jury into believing that in deciding whether Dr. Horowitz made material misrepresentations to Kemper, they could not consider Kemper's evidence that Dr. Horowitz committed fraud during the medical examination conducted by a nurse retained by Kemper. (See Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 52) Kemper's argument is unavailing.

As was the case with Kemper's argument regarding the attachment instruction, Kemper did not object to the point it now cites as error. In fact, Kemper specifically approved the language in interrogatory No. 1 referring to the "initial application" about which it now complains.[12] The fact that, with hindsight, Kemper now speculates that the jury may

have been misled does not warrant a grant of relief.

### E. Kemper's Argument That Failure to Overturn the Jury's Verdict Would Produce an Absurd Result is Without Merit.

■ Kemper argues that given the plaintiffs' acknowledgment that they committed fraud, allowing them to recover under the policy will produce an "absurd result." (See Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 64–65) The Court disagrees. While the Court admits that it was "initially troubled by the prospect of a fraud generating a windfall for the wrongdoer," Horowitz, 861 F.Supp. at 1261, as the Court previously concluded,

> [u]pon closer examination, ... permitting Mrs. Horowitz to collect under the policy is neither inequitable nor unjust. As a matter of public policy, the outcome of the case was preordained by the legislature when it enacted regulatory legislation, [section 441,] prophylactic in nature, that imposes as a penalty for its breach the exclusion of evidence supportive of potentially meritorious defenses [such as fraud]. Therefore, the result obtained here is precisely the outcome the Pennsylvania Supreme Court found in Sandberg and Frost that the legislature intended as a deterrent to violations of Section 441. Viewed in light of the public interest it seeks to promote, it cannot be said that the legislature's calculus of social utility has produced an inequitable result. Nor is the outcome of the case unjust to Federal Kemper. Rather than being an unsuspecting victim of a fraudulent scheme, Federal Kemper was entirely

---

12. Prior to the closing arguments of counsel, the Court questioned the parties regarding any objections to the jury verdict form. (See Tr. Jan. 22, 1996, doc. no. 108 at 3:18—11:11) After hearing plaintiff's objections, the following exchange with defendant's counsel occurred: *The Court:* "Okay. Very well. The verdict form." *Mr. Murtagh (counsel for Kemper):* "Your Honor, I have no problem, other than the—in the first question, we're talking about 'Made material misrepresentations either knowingly or in bad faith in his initial application to Federal Kemper,' which we know the medical exam questionnaire is included on the application. So that's fine. What I don't want to give up is the fact

that the statute says the fraud, misrepresentation or deceit can be made by or on behalf of the insured. And I understand that the question is this way, but I think that its appropriate under the statute—" *The Court:* "Well, I think your instruction—" *Mr. Murtagh:* "Yes." *The Court:* "The instructions control." *Mr. Murtagh:* "Yes, Your Honor." *The Court:* "This is a just a matter—and your certainly entitled to make that argument based on the instruction." *Mr. Murtagh:* "That's fine, Your Honor." *The Court:* "So—okay. Other than that, you are satisfied with the verdict form?" *Mr. Murtagh:* "That's correct, Your Honor." (See Id. at 10:13—11:9)

capable of avoiding the result of which it now complains. Section 441's attachment rule has been on the books for over seven decades and, in fact, the Pennsylvania Supreme Court has emphasized the importance of strictly enforcing the attachment rule in two separate cases which are themselves more than five decades old. Therefore, in light of the ample legal notice provided to Federal Kemper, if it "suffered an unnecessary loss it has resulted solely from its own negligence." *Sandberg*, 20 A.2d at 231.

*Id.* (footnotes omitted).

## III. CONCLUSION

None of the arguments made by Kemper in support of its motion for judgment as a matter of law or, in the alternative, for a new trial have merit.[13] Therefore, Kemper's motion for judgment as a matter of law or, in the alternative, for a new trial will be denied.

An appropriate order shall be entered.

---

13. The Court has carefully reviewed the additional arguments made by Kemper in its post-trial motion and finds them to be without merit. For example, Kemper devotes eleven pages of its sixty-six page memorandum in support of its current motion arguing that "[i]t was prejudicial error for the Court to admit the testimony of the Horowitzes['] estate attorney, Grahme Richards, Esquire to rationalize their material misrepresentations." (*See* Def.'s Mem.Law Supp.J. as Matter of Law, doc. no. 112 at 21–31) However, the jury found for Kemper on the very issue Mr. Richard's testimony addressed, i.e., whether Dr. Horowitz and Mrs. Horowitz made material misrepresentations either knowingly or in bad faith in the December 20, 1991, amendment to the application to Federal Kemper. Moreover, the Court instructed the jury, at the request of Kemper, that advice of counsel of the type provided by Mr. Richards was not a valid defense to Kemper's claim of fraud. (*See* Tr. Jan. 22, 1996, doc. no. 108 at 120:13–18) Therefore, even if it was error to admit Mr. Richards testimony, such error was harmless.