Frederick, Appellant, *v.* Philadelphia Rapid
Transit Company.

Argued December 8, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert T. McCracken,* with him *Samuel Fessenden, William C. Waltman* and *Laurence H. Eldredge,* for appellant.

*Layton M. Schoch,* with him *Bernard J. O'Connell,* for appellee.

OPINION BY MR. JUSTICE STERN, January 2, 1940:

On an August afternoon in 1937, plaintiff was a passenger in the first of three cars of a southbound train operated by defendant in the Broad Street subway in Philadelphia. At City Hall station he alighted and walked south along the platform, with the standing train to his right. For some unexplained reason he slipped from the platform into the pathway of the train,

which meanwhile had started, but he fell at a point so immediately in front of it as not to be within the motorman's range of vision. The train came to an automatic stop caused by some object—presumably plaintiff—coming in contact with the "tripper," a mechanical device extending down behind the front wheel on the left side of the car at a distance of six inches outside the line of the wheels and to within two inches of the level of the rails, its function being to cause the emergency brakes to set whenever it struck anything in its path. The distance the train moved after plaintiff fell was about three-fourths of a car length.

A man named Rodgers, who had been riding in the same car as plaintiff and had also alighted at this station, testified at the trial that he saw plaintiff fall, that he thereupon stepped to the side of the train where the conductor was looking out of the rear window of the first car, and that the conductor remarked to him: "Somebody must be trying the emergency brakes," but Rodgers said: "No, there is a man down under there." The conductor, in his testimony, denied there was any such conversation.

The conductor having gone to the front of the car, he and the motorman stepped out onto the platform. The motorman testified: "I . . . took my flashlight with me and examined the front of the train and went up along the right side and looked under each motor and under the train and proceeded back down again and crossed over in front and looked at the front again and crawled along the third rail and went up that way and then come back again and I put my hand on the platform and looked and saw no one and got back in my train and proceeded." The conductor, also, made some investigation of a more cursory nature. Rodgers' version was that the motorman and conductor "with a searchlight, looked under the front trucks of the train. . . . They looked under the train. And I had walked up the platform to about where the front of the train

was, and was looking down over the side. They immediately, without any more searching, climbed back into the train and proceeded south, toward the Walnut Street Locust station." The entire train passed over plaintiff's body. As a result of the accident, plaintiff was horribly injured, his right foot being cut off at the ankle and his left leg between the knee and hip joint.

The jury rendered a verdict for plaintiff of $33,-487.74. Defendant filed motions for a new trial and for judgment n. o. v., the motion for a new trial being based on alleged excessiveness of the verdict, improper rejection of testimony offered by defendant, and errors in the charge of the court. The court in banc did not dispose of the rule for a new trial but granted defendant's motion for judgment n. o. v. Plaintiff appeals.

The questions in the case concern the measure of duty owed by defendant to plaintiff and the adequacy of the performance of that duty.

It is not necessary to seek an appropriate appellation for plaintiff's legal status as the result of his accidental fall onto defendant's track. Since he did not place himself there voluntarily, he was not a trespasser: *Dobrowolski v. Pennsylvania R. R. Co.*, 319 Pa. 235, 238, 239; Restatement, Torts, section 158, comment (e). But, as he was not invited, and his appearance was not to be anticipated, the extent of defendant's obligation toward him was no greater than if he *were* a trespasser. Even a trespasser, however, is not a pariah. It is true that, unless and until the property owner, or the operator of the instrumentality involved, becomes apprised of his presence, no duty in regard to the trespasser's safety arises (*Trevethan v. Philadelphia & Reading Ry. Co.*, 244 Pa. 414; *Hojecki v. Philadelphia & Reading R. R. Co.*, 283 Pa. 444; *Dobrowolski v. Pennsylvania R. R. Co.*, 319 Pa. 235; *Peden v. Baltimore & Ohio R. R. Co.*, 324 Pa. 444, 446), but when the owner or operator is put on guard as to the presence of the trespasser, the latter im-

mediately acquires the right to proper protection under the circumstances.

What constitutes sufficient notice of a trespasser's exposure to a situation of peril necessarily depends upon the facts in each instance. Most of the decided cases have been concerned with the question whether the trespasser was *seen* by the person sought to be charged with negligence. The eye, however, is only one of the sensory organs which bring information to the brain, and is not the sole means by which knowledge, in a legal sense, may be acquired. Notification may also come from an apparently trustworthy person who is himself an eyewitness. Indeed, there is authority to the effect that even where the circumstances are such that the *likely* presence of a trespasser is foreseeable, the duty of care to avoid injury to him arises: *Francis v. Baltimore & Ohio R. R. Co.*, 247 Pa. 425, 428, 429; *Fitzpatrick v. Penfield*, 267 Pa. 564, 576; Restatement, Torts, section 334.

The legal obligation to trespassers has been traditionally stated to be the avoidance of wilful or wanton negligence. "Wilful negligence" is an obvious misnomer. "Wanton negligence," as distinguished from ordinary negligence, is characterized by a realization on the part of the tort-feasor—or at least what would cause such a realization to a reasonable man—of the probability of injury to another, and by a reckless disregard, nevertheless, of the consequences. As applied to the type of cases of which the present is an example, it is *not* wanton negligence to fail to use care to discover the presence of an unanticipated trespasser, but it *is* wanton negligence, within the meaning of the law, to fail to use ordinary and reasonable care to avoid injury to a trespasser after his presence has been ascertained: *Enright v. Pittsburgh Junction R. R. Co.*, 198 Pa. 166, 169, 170; *Pollack v. Pennsylvania R. R. Co.*, 210 Pa. 631, 633, 634; *Petrowski v. Philadelphia & Reading Ry. Co.*, 263 Pa. 531, 536; *Minute v. Philadelphia & Read-*

*ing Ry. Co.,* 264 Pa. 93, 97, 98; *Cover v. Hershey Transit Co.,* 290 Pa. 551, 557; *Reagan v. Reading Co.,* 126 Pa. Superior Ct. 175, 179, 180; Restatement, Torts, section 336.

Whether, in the present case, defendant's employees were put on notice that a person was underneath the train was for the jury to determine; there certainly was sufficient evidence to warrant the submission to them of that question. The automatic stop brought to the attention of the train crew the fact that some object had come in contact with the tripper. If Rodgers' testimony was believed by the jury it meant that a person who could have had no self-interest or improper motive and was therefore presumably credible told the conductor, "There is a man down under there." The emergency stop and the information given by Rodgers cumulatively constituted, as the jury evidently found, impressive warning as to the situation. What, thereupon, became the duty of defendant's employees? Obviously, to make every reasonable effort to locate the man and remove him before re-starting the train. (See Restatement, Torts, section 336, comment (b).) The circumstances were somewhat the same as if a huntsman were to see what appeared to be a human being moving about in a clump of bushes, or were informed that there was a trespasser there, and then, without first ascertaining the latter's exact position, shot indiscriminately into the bushes and wounded him. The motorman knew that the train had proceeded three-quarters of a car length after the emergency brake first went on, from which it could have been readily inferred that the object, whatever it was, which had come in contact with the tripper, was probably to be found in the vicinity of the rear trucks of the front car. Why did the motorman not see plaintiff lying there? Did he make as thorough a search as he testified that he did? According to the testimony produced at the trial only four minutes elapsed from the time the train first started to

move until the accident had occurred, the search had been made, and the train finally left the station, and plaintiff contends that the motorman could not in that time have conducted as intensive an investigation as he claims to have made. This was all for the jury. If that tribunal concluded that defendant was sufficiently notified of plaintiff's presence under the train to fasten upon defendant the duty of thereafter exercising due care for his safety, it was for them also to determine whether the actual search made by the motorman was as exhaustive as it should have been in the light of the obviously terrible injuries to which a person under the train was likely to be subjected. It follows that the court below erred in entering judgment for defendant n. o. v.

The question of proximate causation, discussed to some extent by the court below, does not arise under the facts of the present case. Of course, defendant can be held responsible only for such of plaintiff's injuries as resulted from the *second* starting of the train. These must be individuated, not necessarily with absolute precision, but with reasonable approximation: *McAllister v. Pennsylvania R. R. Co.,* 324 Pa. 65.

Pending argument on the motion for judgment n. o. v., plaintiff moved to amend the statement of claim by adding the charge of negligence to that of recklessness and wantonness which had been alleged in the original statement and by ascribing the loss of his right foot to the re-starting of the train instead of to plaintiff's accidental fall. Such additional charge of ordinary negligence was unnecessary because included in the more comprehensive allegation of reckless and wanton action. The change in the averment as to the injury to the right foot conformed to the testimony given at the trial; whether this testimony was objected to when offered does not appear in the printed record; had it been so objected to, the statement of claim could then have been amended, subject to a plea of surprise. It

was not a fatal obstacle to the granting of the amendment, under such circumstances, that it was sought after the rendition of the verdict: *Theisen v. Pittsburgh Rys. Co.*, 256 Pa. 475, 481. The court below was therefore in error in overruling the motion to amend.

The judgment is reversed, and the record is remitted to the court below with instruction to act upon defendant's motion for a new trial.