J-A32021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DESTINY GRESART, A MINOR, BY AND THROUGH HER MOTHER DEDRA GRESART, HER NATURAL PARENT AND GUARDIAN, AND DEDRA GRESART, INDIVIDUALLY, IN HER OWN RIGHT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BUFFALO & PITTSBURGH RAILROAD, INC., A DELAWARE CORPORATION; GENESEE & WYOMING, INC., A DELAWARE CORPORATION; AND JAMES MURDOCK, AN INDIVIDUAL | |
| Appellees | No. 11 WDA 2015 |

Appeal from the Order Entered December 8, 2014
In the Court of Common Pleas of Elk County
Civil Division at No(s): 2007-114

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 1, 2016**

Destiny Gresart ("Destiny"), a minor, by and through her mother, Dedra Gresart, her natural parent and guardian, and Dedra Gresart, individually, in her own right, (collectively, "Gresart"), appeal the order entered December 8, 2014, in the Elk County Court of Common Pleas, granting the motion for summary judgment filed by Buffalo & Pittsburgh Railroad, a Delaware Corporation, Genesee & Wyoming, Inc., a Delaware Corporation (collectively, "Railroad"), and James Murdock, an individual ("Murdock"), in this negligence action following a train accident.  On appeal,

Gresart argues the trial court erred (1) in denying her motion for leave to file a third amended complaint raising allegations of willful[1] and wanton behavior, and (2) in granting Railroad and Murdock's motion for summary judgment when there existed a genuine issue of material fact. For the reasons the follow, we affirm.

On August 18, 2004, then seven-year-old Destiny was home with her two teenaged sisters while her mother was at work. While her oldest sister was sleeping, Destiny snuck out of the house to find her other sister who had gone to a store with a friend. The store was located on the other side of railroad tracks located near the Grant Street crossing in Johnsonburg, Pennsylvania. At approximately 1:20 p.m., Destiny was struck by the snow plow of Railroad's train, operated by engineer, Murdock, as she walked on the tracks. The facts leading up to the accident are summarized by the trial court as follows:

> At the time of the accident, the [Railroad's] train operated by Murdock was traveling north at or below 25 miles per hour and was therefore not exceeding the speed limit of 25 miles per hour when approaching the Grant Street crossing in Johnsonburg. Upon approaching the crossing, the train was slowing down and sounded its horn. The crossing's flashing lights were operative and active when the train passed through the crossing, which was marked with "no trespassing" signs. As the train passed through the crossing, the train crew observed [Destiny] approximately 250 feet ahead, walking on the west side of the

---

[1] We recognize that "willful" can also be spelled "wilful," and is referred to as such in much of the older case law. However, for our purposes, we will use the modern spelling of the word, as that was also used by the trial court.

railroad ties and toward the train. The crew, consisting of engineer [] Murdock and conductor Harry Wachob, blew the train horn and applied the emergency brake, and Wachob exited the cab of the train onto the front of the locomotive and yelled at [Destiny]. At approximately … 253 feet west of the Grant Street crossing, [Destiny] was struck by the [Railroad's] locomotive.

Trial Court Opinion, 12/5/2014, at 5-6 (record citations omitted).[2] Destiny suffered severe injuries as a result of the accident.

On August 16, 2006, Gresart commenced an action against Railroad by writ of summons in Allegheny County. A complaint was filed, and the case was later transferred to Elk County. Gresart filed an amended complaint, and, after preliminary objections were sustained in part, a second amended complaint on July 30, 2008. The second amended complaint alleged negligence on the part of both Railroad and Murdock, and claimed the tracks presented an attractive nuisance.[3]

_____

[2] As the court notes in its opinion, these facts were admitted by Gresart in her answer to Railroad's motion for summary judgment. **See** Trial Court Opinion, 12/5/2014, at 5. Further, Gresart admitted Destiny was "walking toward the train with her head down and her hands over her ears." Motion for Summary Judgment, 8/29/2013, at ¶ 32; Amended Response to Motion for Summary Judgment, 9/18/2013, at ¶ 32.

[3] The attractive nuisance claim was based upon Gresart's allegation that there was a "frog pool" located in close proximity to the railroad tracks, which enticed children to walk along the tracks. **See** Second Amended Complaint, 7/30/2008, at ¶ 10. However, in response to Railroad's summary judgment motion, Gresart admitted that there was no evidence of record supporting this claim. **See** Motion for Summary Judgment, 8/29/2013, at ¶¶ 41-44; Amended Response to Motion for Summary Judgment, 9/18/2013, at ¶¶ 41-44. The "attractive nuisance" claim, therefore, is not before us on appeal.

Railroad filed a motion for summary judgment on August 29, 2013, claiming, *inter alia*, Destiny was a trespasser to whom the Railroad owed only a duty to refrain from willful and wanton misconduct. While that motion was pending, on October 7, 2013, Gresart filed a third amended complaint without leave of court. On October 17, 2013, Railroad filed preliminary objections. Thereafter, on October 22, 2013, Gresart filed a motion for leave to file a third amended complaint. Although argument on the summary judgment motion was scheduled for October 22, 2013, the court determined the matter was not ripe until Gresart's motion to file a third amended complaint was considered.

On December 4, 2013, the court heard argument on Gresart's motion to file a third amended complaint. At the conclusion of the hearing, the court directed Gresart, within 10 days, to provide specific record facts supporting her claim that Railroad acted with willful or wanton disregard of the risk to her. **See** N.T., 12/4/2013, at 14 (trial court questioning Gresart's counsel, "But where does it say that Mr. Murdock saw [Gresart], in the record, and failed to take any action? How much time did he have?"). Gresart complied and filed a supplemental brief on December 16, 2013, and Railroad filed a timely response. Thereafter, on January 9, 2014, the court denied Gresart's motion to file a third amended complaint.

The court subsequently conducted argument on Railroad's motion for summary judgment, and, on December 5, 2014, granted the motion.[4] This timely appeal follows.[5]

In her first issue, Gresart argues the trial court erred as a matter of law when it denied her motion for leave to file a third amended complaint. Our standard of review of such claims is well-settled:

> Our standard of review of a trial court's order denying a plaintiff leave to amend its complaint, … permits us to overturn the order only if the trial court erred as a matter of law or abused its discretion. The trial court enjoys "broad discretion" to grant or deny a petition to amend. Amendment of pleadings is governed by Pa.R.C.P. 1033, which provides: "A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading."

*The Brickman Grp., Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 926-927 (Pa. Super. 2004) (internal citations omitted). Further, the Pennsylvania Supreme Court has held "the right to amend should be liberally granted at

_____

[4] Senior Judge Michael E. Dunlavey was originally assigned to the case, and decided the motion to file a third amended complaint. However, President Judge Richard A. Masson presided over the summary judgment proceedings, and entered the order granting Railroad's motion for summary judgment.

[5] On February 11, 2015, the trial court ordered Gresart to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Gresart complied with the court's directive, and filed a concise statement on February 26, 2015. Thereafter, the court issued a Rule 1925(a) opinion relying on (1) the transcript of the December 4, 2013, argument on Gresart's motion to file a third amended complaint, and (2) the December 5, 2014, opinion, filed in conjunction with the order granting Railroad's motion for summary judgment. *See* Pa.R.A.P. 1925(a) Opinion, 3/26/2015, at 3.

any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." **Werner v. Zazyczny**, 681 A.2d 1331, 1338 (Pa. 1996), *quoting* **Connor v. Allegheny General Hospital**, 461 A.2d 600, 602 (Pa. 1983). However, "where a party will be unable to state a claim on which relief could be granted, leave to amend should be denied." **The Brickman Grp.**, *supra*, 865 A.2d at 927.

Gresart asserts the trial court erred in denying her leave to file a third amended complaint for several reasons. First, she contends the proposed amendment did not add any new causes of action, but "simply amplified the existing negligence claims." Gresart's Brief at 21. Gresart notes her second amended complaint "contained general allegations of willful and wanton conduct to support punitive damages[,]" and the proposed amendment "would have ensured that the evidence adduced at trial would comport with allegations in the complaint[.]" **Id.** at 22-23. She also argues the amendment would not have prejudiced Railroad because (1) the statute of limitations had not expired, (2) a trial date had not been scheduled, and (3) the amendment was based upon information gleaned from her expert reports, which were authored after the second amended complaint was filed. **Id.** at 24, 27-28. Lastly, Gresart claims the trial court's reliance on a decision of the Lackawanna County Court of Common Pleas, **Millan v. PAWC**, 25 Pa. D.&C. 5th 181 (2012), is misplaced. **Id.** at 26.

Railroad asserts, however, Gresart's proposed third amended complaint did not simply "amplify" existing claims, but rather, sought to

include factual allegations that were not supported by the record. Railroad's Brief at 27. Railroad further contends that although the trial court permitted Gresart to submit factual evidence to support the new claims, none of the evidence submitted supported the proposed amendment. *Id.* at 34-35.

Upon our review of the record, we agree with Gresart that her motion was not time-barred. Because Destiny was a minor at the time of the accident, the statute of limitations had not expired on her claims. *See* 42 Pa.C.S. § 5533(b)(1)(i) ("If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced."). Moreover, a trial date had not yet been scheduled.

We also agree Gresart was not attempting to add a new cause of action to her complaint, but rather sought to amplify her existing negligence claims with allegations of willful and wanton misconduct to support an award of punitive damages.[6] *See Archibald v. Kemble*, 971 A.2d 513, 519 (Pa.

_____

[6] The proposed new paragraphs in Gresart's third amended complaint did not so much assert new facts or evidence to support her claim of willful and wanton misconduct, as they simply alleged that Railroad and Murdock's actions constituted willful, wanton and reckless misconduct. The new paragraphs in the proposed complaint were as follows:

> 20. [Railroad and Murdock] did nothing to warn pedestrians of oncoming trains, which resulted in catastrophic collision with minor plaintiff.

*(Footnote Continued Next Page)*

*(Footnote Continued)* _____

21. [Railroad and Murdock] are, and were at the time of the collision, well aware of the extreme danger posed to pedestrians traversing property adjacent to unmarked, unguarded and otherwise dangerous railroad crossings.

22. [Railroad and Murdock] had a subjective appreciation of the risk of harm to which [Destiny] was exposed, including but not limited to, the unguarded and unmarked nature of the at issue section of the railroad, and the potentially catastrophic nature of locomotive versus pedestrian collisions, yet they failed to take any steps to ensure the safety of the public, including [Destiny], in conscious disregard of that risk.

23. The risk of an unmarked and unguarded railroad crossing is so obvious that [Railroad and Murdock] must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. To consciously disregard this risk shows a deliberate indifference by [Railroad and Murdock] to the lives and safety of the public and [Destiny].

* * * *

28. [Gresart's] injuries and damages, as set forth above, were a direct and proximate result of [Railroad and Murdock's] negligence, willfulness, wantonness and recklessness in the following particulars: …

n. In althogether … failing to guard or warn those traversing the property against a dangerous condition, use or activity.

29. Further, [Railroad] is vicariously liable for the tortious conduct of [] Murdock alleged hereafter.

* * * *

40. [Gresart's] injuries and damages were a direct and proximate result of [] Murdock's negligence, willfulness, wantonness and recklessness in the following particulars: …

h. In deliberately, willfully, wantonly, recklessly and outrageously failing and refusing to engage the emergency brake until far after impact with [Destiny], in a calculated effort to minimize train interruption, operation and track

*(Footnote Continued Next Page)*

Super. 2009) (finding that, although injured hockey player was required to

demonstrate defendant was reckless, and recklessness was not pled in initial

complaint, he was not precluded from proving that degree of care despite

the fact the statute of limitations had expired; "merely determining the

degree of care is recklessness does not give rise to a separate tort that must

have been pled within the applicable statute of limitations[,]" and trial court

should have concluded the cause of action was "subsumed within the

negligence count pled in their Complaint."), *appeal denied*, 989 A.2d 914

(Pa. 2010).

Nevertheless, we conclude the trial court did not abuse its discretion

when it denied Gresart's motion to amend the complaint because, as will be

*(Footnote Continued)* ————————————————

> expenses, maximize profits for [Railroad] and meet his railroad and personal schedules, in conscious, reckless and outrageous disregard for [Destiny's] life, health, safety and welfare, even after [Destiny] came into [] Murdock's line of sight;
>
> i. In deliberately failing to sound the horn for the required amount of time or in the prescribed cadence of a succession of short sounds, in reckless disregard of the consequences and life, health, safety and welfare of [Destiny];
>
> * * * *
>
> k. In otherwise failing to guard or warn those traversing the property against a dangerous condition, use or activity.

Third Amended Complaint, 10/22/2013, at ¶¶ 20-23, 28-29, 40.

discussed *infra*, the record does not support a claim for punitive damages.[7] Indeed, a punitive damages claim requires proof that a defendant acted "in reckless disregard of the safety of another[,]" which, as the Restatement notes, "is often called 'wanton or wilful misconduct[.]'" **Archibald**, **supra**, 971 A.2d at 519, *quoting* Restatement (Second) of Torts § 500. Because we find Gresart was unable to demonstrate that either Railroad or Murdock acted with willful or wanton disregard for the safety of Destiny, we conclude the trial court did not abuse its discretion in denying Gresart's motion to amend her complaint to include the punitive damages' allegations.

Accordingly, we turn to Gresart's second argument, namely, that the trial court abused its discretion in granting Railroad and Murdock's motion for summary judgment.

When reviewing a motion for summary judgment, we "may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." **Murphy v. Duquesne U. Of The Holy Ghost**, 777 A.2d 418, 429 (Pa. 2001), *citing* **Capek v. Devito**, 767 A.2d 1047, 1048, n.1 (Pa. 2001).

---

[7] Contrary to Gresart's characterization, the trial court did not rely upon the facts of **Millan**, **supra**, an unprecedential Common Pleas Court decision, in denying her motion, but rather, considered the law, set forth in **Millan**, regarding punitive damages, and determined the facts of record did not support a punitive damages' claim. **See** N.T., 12/4/2013, at 18 (trial court noting the **Millan** decision is "not precedential … but it is a great summary of what the law is."). Accordingly, we need not further address this claim.

- 10 -

As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.

**Keystone Freight Corp. v. Stricker**, 31 A.3d 967, 971 (Pa. Super. 2011) (internal citations omitted). **See also** Pa.R.C.P. 1035.2.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

**Jones v. Levin**, 940 A.2d 451, 453-454 (Pa. Super. 2007) (internal citations and footnote omitted). In making this determination, we will "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Keystone Freight Corp.**, **supra**, 31 A.3d at 971.

Here, Gresart concedes Destiny was a **trespasser** at the time she was struck by Railroad's train, and acknowledges "[t]he legal obligation to trespassers is the avoidance of willful *or* wanton misconduct." Gresart's Brief at 33, *quoting* **Evans v. Philadelphia Transp. Co.**, 212 A.2d 440, 442 (Pa. 1965). Nevertheless, she contends there was a genuine issue of material fact as to whether Railroad and Murdock acted with reckless

disregard of a known risk, and the trial court abused its discretion when it viewed the evidence in the light most favorable to Railroad.  For the reasons that follow, we disagree.

As noted above, Destiny was a trespasser on Railroad's tracks; therefore, in order to obtain relief, and survive summary judgment, Gresart was required to establish the actions, or inactions, of Railroad and Murdock constituted willful or wanton misconduct.  In **Evans**, **supra**, our Supreme Court clarified the difference between willful misconduct and wanton misconduct:

> It is true that in several instances this Court has described wilful misconduct as a reckless disregard for the trespasser's safety after actual knowledge of his peril.  However, these decisions have all erroneously equated wilful misconduct with wanton misconduct, used the terms interchangeably and ignored the patent difference. **Correctly speaking, wilful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue.  This, of course, would necessarily entail actual prior knowledge of the trespasser's peril.**  Wanton misconduct, on the other hand, 'means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences * * *.'
>
> Other decisions of this Court have recognized that *actual* prior knowledge of the injured person's peril need not be affirmatively established to constitute wanton misconduct. These cases, as well as the Restatement of Torts, clearly indicate that **if the actor realizes *or* at least has knowledge of sufficient facts to cause a reasonable man to realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid**

**the accident, then he is guilty of wanton misconduct if the recklessly disregards the existing danger.**

Restatement, Torts § 500, defines 'Reckless Disregard of Safety' to exist if the actor 'intentionally does an act or fails to do an act which it is his duty to the other to do, knowing *or having reason to know* of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' (Emphasis added.)

Comment *d* thereto states that if the conduct involves a high degree of chance that serious harm will result, that fact, that he knows *or has reason to know* that others are within the range of its effect, is conclusive of his recklessness.

*Evans*, *supra*, 212 A.2d at 443-444 (internal citations and footnote omitted; emphasis added).

Furthermore, in *Frederick v. Philadelphia Rapid Transit Co.*, 10 A.2d 576 (Pa. 1940), the Court explained:

[I]t is not wanton negligence to fail to use care to discover the presence of an unanticipated trespasser, but it is wanton negligence, within the meaning of the law, to fail to use ordinary and reasonable care to avoid injury to a trespasser after his presence has been ascertained.

*Id.* at 578.[8]    *See also Dudley v. USX Corp.*, 606 A.2d 916, 922 (Pa. Super. 1992) ("Wanton misconduct is ordinarily accompanied by a conscious

_____

[8] In both *Evans*, *supra*, and *Frederick*, *supra*, the Supreme Court determined there was sufficient evidence of the defendant's willful or wanton misconduct to allow the case to proceed to a jury trial.

In *Evans*, *supra*, a jury returned a verdict for the personal representative of the decedent, who was struck by the defendant's train after he fell onto the subway tracks. On appeal, the defendant asserted the trial court erred in failing to grant judgment notwithstanding the verdict.
*(Footnote Continued Next Page)*

***Evans***, ***supra***, 212 A.2d at 442.  In affirming the decision of the trial court, the Supreme Court considered the testimony of the train operator, who was the only witness to the accident.  Although the operator testified "he did not realize there was a human being lying on the tracks until … [it was] too late to stop the train in time to avoid the accident[,]" he also acknowledged he had seen "'an object' lying between the rails" at a time when he could have safely stopped the train before striking the decedent.  ***Id.*** at 443.  The Supreme Court opined:

> [T]he jury would be warranted in finding that a reasonable man, operating this train, would have been more diligent in trying to ascertain the particular nature of the object which he knew to be within the range of his unchangeable path, and the failure to do so, especially in view of the contiguity of the passenger platform, was a reckless disregard for the safety of anyone who might be there.  This, in our opinion, would constitute wilful misconduct.

***Id.***

Similarly, in ***Frederick***, ***supra***, a jury returned a verdict for the plaintiff, who had slipped from the subway platform and into the path of an oncoming train.  The trial court, however, granted the defendant's motion for judgment notwithstanding the verdict.  In concluding the trial court erred, the Supreme Court noted that while it was undisputed the plaintiff could not be seen by the train operator after he fell on the tracks, there was sufficient evidence that the operator was "put on notice that a person was underneath the train" to present a jury question.  ***Frederick***, ***supra***, 10 A.2d at 578.  First, the train "came to an automatic stop caused by some object-presumably plaintiff-coming in contact with the 'tripper,' … [which caused] the emergency brakes to set whenever it struck anything in its path."  ***Id.*** at 577.  At that point, the operator conducted a cursory investigation, but did not see the plaintiff.  ***Id.***  However, in addition to that evidence, the plaintiff presented a witness, who testified that he told the operator there was a man on the tracks.  ***Id.***  Although the operator denied having been told this, the Supreme Court found this credibility determination presented a jury question.  The Court opined:  "The emergency stop and the information given by [the witness] cumulatively constituted, as the jury evidently found, impressive warning as to the situation."  ***Id.*** at 578.

As will be discussed ***supra***, in the present case, there was no evidence that Murdock saw Destiny on the tracks, or was altered to her possible presence, until it was too late to avoid the accident.

indifference to the consequences and **only exists where the danger to plaintiff is realized** and is so recklessly disregarded that there is **at least a willingness to inflict injury, if not the actual intent to do same**.") (emphasis added), *appeal denied*, 616 A.2d 985 (Pa. 1992).

Here, Gresart asserts there were genuine issues of material fact concerning Railroad and Murdock's willful and wanton misconduct sufficient to present the issue to the jury. First, relying on the report of her expert witness, railway consultant Colon R. Fulk, Gresart claims "the evidence suggests that Murdock and Wachob **could have seen** Destiny at a distance of at least 600 feet if they had been attentive, which would have given them ample time to stop the train." Gresart's Brief at 34 (emphasis added).

Fulk opined the accident was the result of Murdock's failure to apply the train's emergency brake in a timely manner. Expert Report of Colon Fulk, 5/15/2012, at 4. In doing so, he relied upon: (1) the train's event recorder data; (2) his own personal observation of the accident scene; and (3) a handwritten statement by Railroad's dispatcher, Randy Martin. *See id.* at 4-7.

Based on the train's event recorder data, Fulk calculated that the train stopped 580 feet after the emergency brakes were applied. *Id.* at 7. Despite the fact Murdock and Wachob both testified they first saw Destiny when she was only 250 feet away, Fulk conducted his own inspection of the accident scene and concluded "a person could been seen in excess of 600 feet looking from south to the north towards the point of impact." *Id.*

Further, he also relied, in part, on a handwritten statement by Railroad's dispatcher, Randy Martin. Martin's statement, completed on the date of the accident, purportedly indicated that Murdock told Martin he applied the service brake, rather than the emergency brake, when he first saw Destiny. *Id.* Coupled with the event recorder data that the service brake was applied approximately 633 feet before impact, Fulk opined "Destiny was seen by the engineer at a point that would have allowed the train to stop short her location." *Id.* Fulk also stated a contributing factor to the accident was "the train crew['s] failure to sound normal and customary horn signals as required by railroad operating rules." *Id.* at 8. Based upon Fulk's expert opinion, Gresart asserts "[t]he objective evidence suggests … Murdock saw Destiny from more than 600 feet away and laid on his horn for 23 seconds, right up until the point of impact, hoping she would move off the tracks." Gresart's Brief at 35.

Gresart also relies on the report of her second expert, Alan J. Blackwell, who opined Railroad failed to provide adequate side clearance between the tracks and a stone retaining wall,[9] and failed to offer

_____

[9] According to Blackwell, industry regulations required a clearance of 12 feet from the center line of the track, and the clearance at issue was only three feet from the west rail to the retaining wall. Expert Report of Alan Blackwell, 10/31/2012, at 7, 9-10, citing 52 Pa. Code § 33.122(b). We note, however, Railroad states the regulation in Section 33.122(b) "does not apply to tracks constructed prior to 1974, including the tracks at issue." Railroad's Brief at 42. Regardless, as we will discuss *infra*, assuming, *arguendo*, the side

*(Footnote Continued Next Page)*

- 16 -

community safety education programs. *Id.* at 35. Gresart argues "it is clear [Railroad] made a conscious choice not to remedy the inadequate side clearance or erect deterrents at the crossing when they knew of the danger in not doing so." *Id.* at 35.

The trial court concluded, however, there was "no evidence that prior to having observed [Destiny] some 250 feet ahead, the train crew had actual prior knowledge of the presence of the minor plaintiff or had been put on guard as to her presence on or near the train track in time to have stopped the train and averted the accident." Trial Court Opinion, 12/5/2014, at 6. The court noted Gresart had admitted, in her response to Railroad's summary judgment motion, that the crew first saw Destiny only 250 feet ahead, as the train passed through the Grant Street crossing, at which time they "blew the horn, applied the emergency brake and Wachob yelled to the child." *Id.* Since Fulk estimated the train stopped 580 feet after the emergency brake was applied, the court found "no material facts are at issue that would have allowed [Railroad and Murdock] to stop the train within the distance of 250 feet and avert the accident." *Id.*

Moreover, the trial court disregarded Fulk's opinion that Murdock saw or could have seen Destiny in sufficient time to stop the train because it was "based on facts entirely lacking in foundation and unsupported by the

*(Footnote Continued)* ────────────

clearance was inadequate, that fact does not constitute evidence of Railroad's willful and wanton misconduct.

- 17 -

record." *Id.* at 7. The court explained that Fulk relied, in part, on a handwritten statement by Martin, which, as Gresart acknowledges, is not included in the certified record. *Id.* *See also* Gresart's Brief at 39. Accordingly, the court found the facts underlying Fulk's opinion were not substantiated in the record.

Further, the court concluded Gresart's "claims relating to the purported failure to post warning signs and failure to erect a fence or other barrier to inhibit entry onto the property are without substance necessary to develop a basis for recovery of damages in this case." *Id.* at 9. The court emphasized there was "no evidence that signage in the area was inadequate and there was clear evidence that Destiny was a trespasser." *Id.* at 10.

Our review of the record reveals no basis to disturb the trial court's ruling. Gresart's primary claim is that Murdock and Wachob could have seen, and indeed, should have seen, Destiny from a distance of 600 feet away. Gresart's Brief at 34. With a stopping distance of 580 feet, Gresart asserts that had Murdock immediately applied the emergency brake at that distance, the train would have stopped in time to avoid the accident. However, Gresart ignores the fact that Railroad and Murdock's only duty to Destiny, an admitted trespasser, was to refrain from **willful or wanton misconduct**.

First, Gresart presents no evidence to support her theory that Murdock and Wachob actually saw Destiny in enough time to avoid the accident. In other words, she failed to present a genuine issue of material fact that

Murdock was guilty of willful misconduct, in that he purposefully took no action to avoid an accident he was "substantially certain would ensue." **Evans**, **supra**, 212 A.2d at 443. Moreover, she also failed to present a genuine issue of material fact that Murdock was guilty of wanton misconduct, in that he had "knowledge of sufficient facts" to realize the "existing peril" to Destiny "for a sufficient period to time beforehand to give him a reasonable opportunity to take means to avoid the accident," but failed to do so. **Id.** at 444.

Fulk's personal observation of the accident scene demonstrates only that a conductor could have possibly seen a person on the tracks 600 feet ahead. However, Gresart was required to demonstrate that Murdock did, in fact, see Destiny in enough time to stop the train, and failed to do so, either purposefully (willful misconduct) or with reckless disregard to the danger of failing to take action (wanton misconduct). Fulk's personal observation proves **only** that Murdock **may have been** inattentive, and, thus, negligent, but does not demonstrate Murdock saw Destiny with sufficient time to avoid the accident. **See Frederick**, **supra**, 10 A.2d at 578 ("[I]t is not wanton negligence to fail to use care to discover the presence of an unanticipated trespasser[.]").

Fulk also based his opinion on a handwritten statement by Railroad's dispatcher, Randy Martin. Fulk explained the significance of this statement as follows:

Mr. Martin's statement was written on the same date of the incident, he stated that engineer Murdock reported to him that first service was applied upon seeing Destiny. The locomotive event recorder shows the first service brake application was made approximately 633 feet before the emergency brakes were applied. It is my opinion, had engineer Murdock applied the trains' emergency brake at that point, rather than the minimum first service braking, injury to Destiny would have been avoided or substantially reduced.

Expert Report of Colon Fulk, 5/15/2012, at 7. The trial court found Fulk's opinion was "entirely lacking in foundation" because, as noted earlier, Martin's handwritten note was not included in the certified record, and therefore, is not in evidence. Trial Court Opinion, 12/5/2014, at 7; Gresart's Brief at 39. Nevertheless, Gresart asserts the trial court improperly rejected Fulk's expert opinion because (1) Murdock, himself, acknowledged the existence of the note in his deposition testimony, and (2) Fulk relied on other evidence "with which the Trial Court took no issue." Gresart's Brief at 39-40.

We again find no abuse of discretion on the part of the trial court. As Gresart points out, it is "not within the trial court's province to attribute no weight to the plaintiff's expert report where it was adequately supported by the summary judgment record." *Id.* at 39, *citing* **Thompson v. Ginkel,** 95 A.3d 900, 906 (Pa. Super. 2014), *appeal denied*, 108 A.3d 36 (Pa. 2015). Nonetheless, it is well-settled that:

An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture.

*Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968).

Here, Martin's handwritten note is not in the certified record, and was never presented to the trial court. Although Gresart's counsel asked Murdock about the note during Murdock's deposition, the note was not read into the record. *See* Murdock's Deposition, 3/20/2009, at 216-222. Rather, counsel questioned Murdock about a line in the note, which purportedly read: "throttle position number one and first service applied upon seeing the trespasser." *Id.* at 218. However, when asked if he applied the service brake as soon as he saw Destiny, Murdock replied, "No, it was before that." *Id.* at 220. Indeed, Murdock had testified previously that he engaged the brake about 20 car lengths **before** the Grant Street intersection "[t]o slow down the train for a slow order" as directed by the Railroad. *Id.* at 63-64. Therefore, Fulk erroneously relied upon this single statement, not included in the record and taken out of context, to conclude (1) Murdock saw Destiny earlier than both he and Wachob testified, and (2) Murdock applied the service brake, rather than the emergency brake, in reckless disregard to the consequences. We agree with the trial court that Fulk's opinion is based on mere conjecture.

With regard to the other evidence upon which Fulk relied, we note Fulk based his opinion on the event recorder data, as well as his personal observation of the incident location. However, as noted *supra*, this "evidence" does not support a conclusion that Murdock acted with willful or wanton negligence. Indeed, neither the data indicating when the brake was

applied, nor Fulk's observation of the accident site, demonstrate when Murdock saw Destiny on the tracks. Because Destiny was a trespasser, Murdock's duty did not arise until **after** he was alerted to her presence, or potential presence, on the tracks. **See Frederick**, **supra**; **Evans**, **supra**. It was at that point he had a duty to refrain from willful or wanton misconduct. Indeed, Gresart admitted, in her response to Railroad's motion for summary judgment, Murdock and Wachob "observed [Destiny], approximately 250 feet ahead[.]" **See** Motion for Summary Judgment, 8/29/2013, at ¶ 31; Amended Response to Motion for Summary Judgment, 9/18/2013, at ¶ 31. Accordingly, we conclude the trial court did not abuse its discretion in rejecting Fulk's expert report as "lacking in foundation and unsupported by the record."[10] Trial Court Opinion, 12/5/2014, at 7.

_____

[10] We note Fulk's conclusion that Murdock's "failure to sound normal and customary horn signals as required by railroad operating rules" was also a "contributing factor[]" to the accident similarly does not meet the standard of willful or wanton misconduct. **See** Expert Report of Colon Fulk, 5/15/2012, at 8. Indeed, there is no evidence Murdock's failure to sound the horn in the proper cadence contributed, in any way, to the accident, or exemplified reckless disregard to the safety of trespassers.

Similarly, Gresart's reliance upon the deposition testimony of both Roxanne Cherry and Kenneth Polaski to raise a genuine issue of material fact is misplaced.

Cherry, a neighbor of Gresart's, testified she heard the train "lay on [the] horn" before the accident, which was unusual. Deposition of Roxanne Cherry, 9/14/2009, at 11. Although she **did not see** the accident, based solely on the fact that the operator "never let up on that horn" before Cherry heard the "wheels grinding to a stop," she estimated the train operator "probably saw [Destiny] a good 50 yards before he got to the crossing[.]"
*(Footnote Continued Next Page)*

- 22 -

Second, we agree with the trial court that Gresart's additional assertions concerning Railroad's failure to (1) provide adequate clearance between the tracks and a retaining wall, (2) erect barriers to deter trespasser, and (3) offer community safety education programs, were also are insufficient to survive summary judgment. As noted *supra*, Railroad's duty to Destiny was to refrain from willful or wanton misconduct. There is simply no evidence that Railroad, or its employees, was aware of the presence of trespassers on the tracks where the accident occurred, and the peril that would ensue unless it took action, and "recklessly disregard[ed] the existing danger" to them. *Evans*, *supra*, 212 A.2d at 444.

Accordingly, we find no basis to disturb the trial court's ruling that Gresart failed to provide sufficient record evidence of either Railroad or Murdock's willful and wanton misconduct to survive summary judgment. *See Dudley*, *supra*, 606 A.2d at 922 ("Absent [] factual allegations of

*(Footnote Continued)*

*Id.* at 16. Cherry's lay testimony concerning when the train operator **may have seen** Destiny is insufficient to submit the issue to the jury.

Moreover, Polaski testified in a deposition that his vehicle was stopped at the Grant Street intersection at the time of the accident, and Wachob looked over at him as the train entered the intersection. Deposition of Kenneth Polaski, 9/9/2009, at 17. Gresart asserts this testimony demonstrates "Wachob, and perhaps Murdock, was inattentive upon their approach to the crossing." Gresart's Brief at 29. Again, we reiterate Gresart was required to demonstrate more than Murdock's inattentiveness. Rather, she was required to prove willful or wanton misconduct. Polaski's testimony does not support such a claim.

willfulness or wantonness, appellant was unable to make out a *prima facie* case against [defendant].").  Therefore, we affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/1/2016